HARLEY HAMLIN, Appellant, *v.* FRANK A. SEARS et al., Respondents.

Where one has wrongfully taken the property of another and sold it, not as agent, but on his own account, mere silence upon the part of the owner does not confirm the sale ; the confirmation must rest upon some consideration upholding it, or upon an estoppel. The owner, upon discovery of the wrong, is not required to make immediate efforts to regain his property, and silence, short of the time prescribed by the statute of limitations, will not bar his claim.

During the winter of 1872 and 1873, M. having in his warehouse at Avon a quantity of barley belonging to S., without the knowledge or consent of the latter, shipped it in his own name and on his own account to Buffalo, and sold it to defendants. In July, 1873, S. discovered that the barley had been shipped to Buffalo, but made no efforts to follow and reclaim it. In May, 1874, he made an assignment to plaintiff for the benefit of creditors ; the claim against defendants was not inserted in the schedule and plaintiff did not learn of it until some time after the assignment, and first made claim for the barley in January, 1875 ; defendants then, for the first time, being advised of the ownership of S. In an action for the conversion of the barley, S. testified that he thought he mentioned the claim to his attorney when the schedule was made. *Held*, that defendants could not claim an estoppel, as they did not rely upon the silence of S., and were not, so far as appears, damaged thereby ; that there was no confirmation of the sale, and that plaintiff could maintain the action.

Also, *held,* that evidence as to the market price of barley, in March, 1873, was competent ; that it was not necessary to confine the evidence to the barley in question.

The decision of the General Term herein was filed nearly two years, and the appeal to this court was taken more than one year ago. The respondents' counsel requested, in case the court reached a conclusion different from that of the General Term, that it would suspend its decision, to give opportunity to apply to that court for an order showing that the reversal was upon the facts as well as the law. It did not appear that the reversal was upon the facts. *Held,* that the request could not be granted ; that it would not be proper to allow a new decision to be made by the court below to defeat the appeal ; and that if the reversal was upon the facts, the respondents should have taken proceedings before the argument and submission of the case to procure an amendment of the order of General Term.

(Argued September 30, 1880 ; decided October 12, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of plaintiff entered upon the report of a referee, and granting a new trial.

The nature of the action and the facts are set forth sufficiently in the opinion.

*E. A. Nash* for appellant. The mere silence of the owner, after his property has been taken by a trespasser, will not in law amount to a ratification and adoption of the unlawful act. (2 Greenleaf on Evidence, § 67 ; *Thompson* v. *Craig,* 16 Abb. [N. S.] 32 ; Story on Agency, § 251 ; 2 Kent, 616, note 1 [12th ed.] ; *Wilson* v. *Lumman,* 6 Mann. & Gr. 236 ; *Watson* v. *Swan,* 11 C. B. [N. S.] 756.) The facts do not bring the case within the rule of a subsequent ratification, even assuming that Marsh sold as the assumed agent of Stanley, but without authority. (*Owings* v. *Hull,* 9 Pet. 629 ; *Nixon* v. *Palmer,* 8 N. Y. 398 ; 2 Greenleaf on Evidence, § 66.)

*Myron H. Peck* for respondents. It was the imperative duty of Stanley to give prompt notice of the fact to the consignees, Sears and Daw, if he intended to repudiate the authority of Marsh in making the consignments to them of the bar-

ley. (*Williams* v. *Storm ; Jervis* v. *Hoyt, supra ;* Story on Agency, § 256.)

EARL, J.   This action was brought for the conversion by the defendants of a quantity of barley which, at the time, belonged to Daniel Stanley, the assignor of the plaintiff.   The defendants, in their answer, admit that Stanley owned the barley, but allege that they purchased it of Charles H. Marsh, who had full power and authority to sell it.

Upon the issue thus made, the referee found against the defendants.   The General Term did not disturb the findings of facts; and we are, therefore, only to inquire whether the referee erred as to the law applicable to the facts found, or to such facts as ought to have been found upon undisputed evidence.

The facts show that the barley was, in the winter of 1872 and 1873, in a warehouse owned by Marsh, at Avon, and that he took the barley without the knowledge, authority or consent of Stanley, and shipped it in his own name and on his own account to the defendants at Buffalo, to whom he sold it in his own name.   He did not assume to act as agent for Stanley, and the defendants did not deal with him as such agent, and Stanley had never clothed him with any apparent authority as his agent to sell this barley, and had never held him out as such.

But upon facts now to be stated, it is claimed by the learned counsel for the defendants, and the General Term has held, that Stanley ratified the sale made by Marsh, and hence, became bound thereby.   The first car-load of the barley was shipped to the defendants December 31, 1872, and the last car-load March 7, 1873.   In the latter month, Stanley discovered that a large portion of his barley had been taken away; and he made inquiry of Marsh about it and was informed by him that it was in a malt-house in the same village, and he was thus induced to rest easy about it until July, when, by examination at the railroad office, he, for the first time, discovered that it had been shipped to Buffalo.   This was about five months

after the last barley had been shipped. It does not appear that Stanley thereafter, prior to May, 1874, made any efforts to follow or reclaim the barley, and in that month he made a general assignment to the plaintiff for the benefit of his creditors. This claim against the defendants was not inserted in the schedule of Stanley's assets made after the assignment, but he testified that he thought he mentioned it to his attorney at the time the schedule was made. The plaintiff testified that he did not hear of this claim until some time after the assignment was made, and that he first called upon the defendants and made claim upon them for the barley in January, 1875, and that was the first time that they learned of the claim that the barley belonged to Stanley and was wrongfully taken and sold to them.

Upon these facts the alleged ratification is claimed to be made out. The counsel for defendants requested the referee to find, as matters of fact, "that Stanley ascertained, as early as July 21, 1873, that all of said barley had been shipped to defendants at Buffalo, N. Y., and by and on account of said Charles H. Marsh;" and that "Stanley at no time thereafter ever notified defendants, or either of them, of any want of authority on the part of said Marsh to sell said barley, or to ship it in the form in which it was shipped, or to receive payment therefor;" and he refused so to find. And he requested the referee to find, as a conclusion of law, "that such action of said Stanley, with knowledge of the facts as aforesaid, amounted in law to an acknowledgment and ratification of the authority of said Marsh, as the agent of said Stanley in making such sales and shipments of barley and receiving payment therefor, and renders such transactions on the part of said Marsh in the premises of binding force and effect upon said Stanley and upon his assignee, the plaintiff;" and he refused so to find and decide. The counsel for defendants bases his contention here upon such requests and refusals.

The general doctrine that one may, by affirmative acts, and even by silence, ratify the acts of another who has assumed to act as his agent, is not disputed. It is illustrated by many

cases to be found in the books, and set forth by all the text writers upon the law of agency. (Story on Agency, § 251 a; 2 Greenl. on Ev., §§ 66, 67; 2 Kent's Com. 616; *Thompson* v. *Craig*, 16 Abb. [N. S.] 29; *Wilson* v. *Tumman*, 6 Mann. & Gr. 236; *Watson* v. *Swann*, 11 C. B. [N. S.] 756.) But the doctrine properly applies only to cases where one has assumed to act as agent for another, and then a subsequent ratification is equivalent to an original authority. One may wrongfully take the property of another not assuming to act as agent, and sell it in his own name and on his own account, and in such case there is no question of agency, and there is nothing to ratify. The owner may subsequently confirm the sale, but this he cannot do by a simple ratification. His confirmation must rest upon some consideration upholding the confirmation, or upon an estoppel. (*Workman* v. *Wright*, 36 Ohio St. 405.)

Here Stanley did no act, and said no word ratifying the sale of his barley. The most that can be claimed is that after he discovered that the barley had been shipped to the defendants he made no efforts to reclaim it, and gave no notice of his title to the defendants. No estoppel can be claimed, as the defendants did not rely upon Stanley's silence, and were not, so far as appears, damaged thereby. So that it comes down to this: When the property of one man is wrongfully taken and sold by another, in his own name and for his own benefit, must the owner, when he afterward discovers the wrong, make efforts to reclaim his property, or notify the purchasers of his claim at the risk of losing his property? There is no authority holding that such a duty rests upon the owner of property wrongfully taken and converted. The mere silence of the owner, under such circumstances, will not bar his claim, if it be short of the time prescribed in the statute of limitations. The rule of *caveat emptor* applies, and the purchaser must see to it that he buys of one who owns the property or has authority to sell.

We have carefully examined all the authorities cited by the learned counsel for the defendants, and it is sufficient to say of them, that they in no degree sustain the novel doctrine con-

tended for by him. The maxim that "he who has been silent when in conscience he ought to have spoken shall be debarred from speaking when conscience requires him to be silent," cannot be invoked in this case. It would have been applicable if Stanley had stood by and in silence permitted Marsh to deal in or sell his property, or if hearing that he had taken his property, he had in silence seen the defendants pay him for the property. When he first heard of this wrong, the property had been taken and paid for, and the time when conscience required him to speak was passed. His silence induced no act and did no wrong.

The plaintiff, as a witness on his own behalf, was asked this question: "What was the market value of barley in Avon in March, 1873?" To this defendants' counsel objected that the witness was not shown to be competent to speak as to the value of the barley in suit, and that his evidence should be confined to that barley. The objection was overruled and the witness was allowed to answer. Barley is a well-known commodity, and has a market price, and one who knows it can testify to it. The general market price of barley was one of the elements from which the referee, with other evidence, could arrive at the value of the barley in suit. There was, therefore, no error in receiving the evidence.

The learned counsel for the defendants requested us, in case we reached a conclusion upon the law different from that reached by the court below, that we should suspend our decision and give him an opportunity to apply to that court for an order showing a reversal of the judgment of the referee upon the facts as well as the law. This request we cannot grant. That court filed its decision nearly two years ago. The appeal to this court was taken more than one year ago, and to grant the request now, after the case has been argued, submitted to us, and a conclusion reached thereon, would not be just to the plaintiff. There is no suggestion that the court below actually reversed the judgment upon questions of fact, and the opinion there pronounced shows that the reversal was upon the law of the case. It certainly would not be proper, after the appeal

has been taken to this court, to allow a new decision to be made by that court to defeat such appeal. If, however, that court actually did reverse the judgment upon the facts as well as the law, the defendants should, before the argument and submission of the case, and with proper diligence, have taken proceedings to have the order there made so amended as to express the truth. It is too late now. To hold otherwise would be setting a precedent which would lead to great embarrassment in our practice and injustice to parties.

We conclude, therefore, that the order of the General Term should be reversed and the judgment upon report of referee affirmed, with costs.

All concur, except MILLER, J., not voting.

Order reversed and judgment affirmed.