ARTHUR ANNETT, Respondent, v. THE CHASE NATIONAL BANK, Appellant.

First Department, April 29, 1921.

Banks and banking — action by payee to recover amount of draft paid by drawee on forged indorsement — delay in notifying drawee of forgery constitutes defense — negligence as matter of law — drawee need not show that it would have been benefited by notice.

In an action against the drawee of a draft to recover the amount thereof, which was paid by it to a third person on the forged indorsement of the plaintiff, the payee, it is a good defense that the plaintiff delayed in notifying the defendant for sixty days after he had acquired knowledge of the payment of the draft by the defendant, during which time he was endeavoring to effect a settlement with the forger; such delay constitutes negligence as a matter of law.

It is the duty of a person who seeks to hold a bank liable for paying a forged draft to advise the bank promptly after a discovery of the forgery, and, therefore, the defendant was not obligated affirmatively to establish that it would have been benefited if it had been promptly notified of the forgery.

APPEAL by the defendant, The Chase National Bank, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of November, 1920, upon the verdict of a jury, and also from an order entered in said clerk's office on the 23d day of November, 1920, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*David D. Ackerman* of counsel [*George Hamlin* with him on the brief], for the appellant.

*Horace L. Cheyney* of counsel [*Edgar R. Mead*, attorney], for the respondent.

GREENBAUM, J.:

The action is for conversion of a draft payable to the order of the plaintiff. The answer sets up a general denial and defenses of ratification and estoppel. The facts are as follows: The plaintiff was the owner of a mortgage executed by one

Donald McVickar for $1,850 on property situated in Dade county, Fla. The note for which the mortgage was given as security fell due on August 6, 1919. According to the plaintiff he instructed his lawyer, one James T. Bunt, to attend to the collection of the mortgage debt. After retaining Bunt, the plaintiff received a letter from one Fossey, a real estate agent, a friend of his in Miami, Fla., advising him that McVickar was ready to pay off the mortgage and suggesting that the satisfaction piece and note and mortgage be sent to the Dade County Security Company for surrender upon the payment of the principal and interest. Plaintiff forwarded this letter to Bunt who prepared a satisfaction piece which was thereafter duly executed and returned to him. On September 18, 1919, Bunt mailed the satisfaction piece together with the mortgage and note to the security company with the request that they be delivered to McVickar upon the payment of the principal and interest and that a draft for the amount of the collection be sent to him payable " to Arthur Annett or James T. Bunt, his attorney."

On October eighteenth the Dade County Security Company received the sum of $2,013.76 in payment of the note, mortgage and satisfaction piece. On October twentieth that company purchased from the Bank of Bay Biscayne of Miami, Fla., a draft for the sum of $2,013.76 drawn upon the defendant, the Chase National Bank of New York city, payable to the order of " Arthur Annette " and forwarded it to Bunt. Upon its receipt on October twenty-third, Bunt indorsed thereon the name of " Arthur Annette " in a disguised handwriting and underneath he indorsed his own name and received the proceeds of the draft through the Closter National Bank of New Jersey. The Closter Bank thereafter indorsed and forwarded the draft to the Federal Reserve Bank of New York which collected it from the defendant, charging the amount thus paid to its customer, the Bank of Bay Biscayne and in due course sending the latter a statement and the draft as evidence of payment. Instead of turning over either the draft or his own check to plaintiff, Bunt appropriated the money to his own uses and evaded the plaintiff who made a number of ineffectual attempts to see him during the latter part of 1919. Before the end of 1919 plaintiff learned that

Bunt had received the draft in October. On Christmas day of 1919 plaintiff authorized his brother-in-law, a Mr. Bellinger, to take up the matter with Bunt. On December twenty-sixth Bellinger wrote to Bunt and requested him to make a remittance to the plaintiff " at once," to which Bunt replied: " Owing to the entanglements, I cannot close this matter until January 6th, when I will be glad to do so."

Mr. Bellinger replied on December thirtieth that he could see no reason why there should be a further delay of even a week, but stated: " Nevertheless, it will probably take until the date you mention for me to complete certain investigations that I have instituted and I will, therefore, venture to say that it will be satisfactory to Mr. Annett if on or before January 6, you have paid to him the whole amount you received for him with interest at 6% from the date you received it to the date of your payment."

Bunt failed to keep his promise to pay on January sixth. About a week thereafter Bellinger wrote for particulars to Fossey who replied by letter dated January 17, 1920. On January twenty-seventh Bellinger telegraphed to Fossey inquiring as to the name of the bank on which the draft was drawn. Fossey replied by letter under date of January twenty-seventh as follows: " Your wire received as follows: ' Draft endorsement forged. On whom was it drawn? ' At the first opportunity I went to the Bank of Bay Biscayne and have had them look up the draft which had been returned to them, and I am enclosing on separate sheet a copy of all the endorsements and all the particulars regarding it."

The letter and accompanying memorandum giving details of the draft including its date, the names of the drawer, drawee and payee and all indorsements were presumably received on or about February 1, 1920. About ten days after receiving Fossey's letter and particulars, Bellinger wrote to Bunt under date of February tenth, as follows: " In his [plaintiff's] name I hereby demand the payment by you to Arthur Annett * * * of the amount of $2,057.37. This is $2,013.75, the amount of the draft to his order cashed by you in the Closter National Bank on October 24, 1919, together with interest at 6% from that date. It will be to your interest to have a certified check for the amount named in his hands or in mine before

4 o'clock on Friday, February 13." Bunt wrote under date of February thirteenth that he had been sick and had been endeavoring to realize upon his assets. Plaintiff did nothing thereafter until March thirtieth, when accompanied by his attorney, a Mr. Mead, he called at the Chase National Bank and had an interview about the matter with its chief clerk, a Mr. Moorhead, who told them that the defendant had received the original draft from the Bank of Bay Biscayne a day or two before and thereupon showed it to them and gave them a copy and subsequently a photographic copy thereof.

The evidence is that the first intimation that the Chase National Bank had as to any irregularity about the draft was a day or two before plaintiff called upon it by reason of the communication received from the Bank of Bay Biscayne inclosing the draft with the statement that it was sent to defendant so that the plaintiff might inspect it.

It thus appears that the defendant was first made aware of the forgery or of any irregularity about two months after the plaintiff had learned that the draft was drawn upon the defendant and about three months after he knew that Bunt had forged the draft. It does not appear when Bunt left this jurisdiction, if he ever left it. But it is evident that at least up to February thirteenth Bunt was within this jurisdiction.

After both sides rested, the defendant moved for a direction of a verdict in favor of defendant, which was denied. The defendant presented numerous requests to charge the jury, some of which were charged, the others being modified or refused.

The exceptions taken to the denial of the motion for a direction and to the refusal to charge certain requests present the serious questions raised upon this appeal.

The most important of these is whether the long delay of the plaintiff in apprising the defendant of Bunt's forgery is fatal to a recovery as matter of law and whether the learned court did not err in refusing to charge the following requests submitted in behalf of the defendant: " 17. If Bunt endorsed the draft and collected the proceeds without authority as soon as the plaintiff became acquainted with these facts, there rested a duty upon him promptly to repudiate these

acts of his agent as being done without authority, and as soon as the plaintiff became informed that the defendant had paid the draft a duty rested upon the plaintiff, promptly to notify the defendant that the agent had acted without authority and that plaintiff would hold defendant liable for the conversion of the draft. Failure on the part of the plaintiff promptly to repudiate and to give such notice to the defendant would be a ratification by the plaintiff of his agent's acts." This request was refused and defendant duly excepted.

" 19. If the plaintiff was negligent in giving notice to the defendant it is not necessary that it should be made to appear by evidence that the defendant was injured because injury is presumed from the delay." The Court: " Yes, if he is found negligent, that would be true. I so charge.

" 20. The right to seek and compel restitution from the person committing the forgery is a valuable one and if it appears that the defendant by reason of the negligence of the plaintiff was prevented from promptly and effectively exercising that right, the plaintiff cannot recover."

To this request the court stated: " With reference to that request, gentlemen, I would charge it to the extent of saying that the right to seek and compel restitution involves the question as to whether or not the defendant was prejudiced. Otherwise, charged." The defendant thereupon duly excepted. Clearly this charge as modified was inconsistent with request 19, in which the court charged that " injury is presumed from the delay."

It thus appears that the defendant in various ways brought home to the court the point that there could be no recovery if plaintiff was negligent.

In *Leather Manufacturers' Bank* v. *Morgan* (117 U. S. 114) the court said: " If the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank was thereby prejudiced, because it was prevented from taking steps, by the arrest of the criminal, or by an attachment of his property, or other form of proceeding, to compel restitution. It is not necessary that it should be made to appear, by evidence, that benefit would certainly have accrued to the bank from an attempt to secure payment from the criminal. Whether the depositor is to be held as having ratified

what his clerk did, or to have adopted the checks paid by the bank and charged to him, cannot be made in this action to depend upon a calculation whether the criminal had at the time the forgeries were committed, or subsequently, property sufficient to meet the demands of the bank.   *   *   *   As the right to seek and compel restoration and payment from the person committing the forgeries was in itself a valuable one, it is sufficient if it appears that the bank by reason of the negligence of the depositor was prevented from promptly and, it may be, effectively, exercising it."

In *United States* v. *National Exchange Bank.* (45 Fed. Rep. 167) the court said: "There is, I think, another reason why the plaintiff should not recover. The department waited over a month, from about March 11th, to April 17th, after having notice of the forgery, before returning the check to the bank, or giving any notice of its intention to hold the bank liable. This was, within all the cases, an unreasonable time to wait. The notice should have been given without unnecessary delay after discovery of the fraud, to enable the bank to pursue any remedy it might have against the forger or indorsers. It is no doubt true that full knowledge of the forgery may not have been in possession of the government until the coming in of the special agent's report. But it was apprised of the fraud before March 15th, and knew substantially all that was afterwards reported of it by the agent. It certainly knew enough of it to put it upon inquiry. It is urged in answer to his objection that the defendant also had notice of the fraud about the same time. But that was not enough. The government did not repay the money until July, and the bank could not assume, without the return of the check and demand of payment that the government intended to pay, or to hold the bank responsible. 2 Pars. Notes & B. 598; *Redington* v. *Woods*, 45 Cal. 406; 3 Amer. & Eng. Enc. Law, 224, and cases cited; *Cooke* v. *U. S.*, 91 U. S. 396; *U. S.* v. *Cent. Nat. Bank* — *Philadelphia*, 6 Fed. Rep. 134; *Gloucester Bank* v. *Salem Bank*, 17 Mass. 33. Judgment for defendant."

In *Connors* v. *Old Forge D. & D. Bank* (245 Penn. St. 97) a depositor delayed forty-three days after the discovery of the forgery in notifying the bank, and in *Mc Neeley* v. *Bank of North America* (221 id. 588) there was a delay of three

months. In both of these cases the court held that there could be no recovery as matter of law.

The rule has frequently been announced that it is the duty of the party who seeks to hold a bank liable for paying a forged check or draft to advise the bank promptly after the discovery of the forgery. The reason for the rule obviously is that unless the bank is thus promptly notified, it may be deprived of the opportunity to pursue the forger and recoup its loss. It follows that the bank is not obligated affirmatively to establish that it would have been benefited if it had been promptly apprised of the forgery.

The undisputed facts before us in the instant case are that plaintiff had absolute knowledge on or about February 1, 1920, that the draft had been drawn on the defendant and that Bunt had forged the indorsement and that for three weeks or more prior to February first he knew that Bunt had forged the indorsement without knowing the name of the bank upon which the draft was drawn, and that despite such knowledge, plaintiff dallied with the forger during January and the whole of February, if not later, upon his promise to make good the loss, and that the defendant was kept in ignorance of the forgery until about the first day of April.

Upon the state of facts here appearing it was not necessary for the court to submit to the jury the question of fact whether plaintiff was guilty of negligence since his negligence was firmly established as matter of law by an unexplained delay of sixty days in making a demand upon the bank after knowledge that the defendant had paid the draft upon a forged indorsement.

The complaint should have been dismissed. The judgment and order are reversed, with costs, and the complaint dismissed, with costs.

DOWLING, LAUGHLIN, SMITH and MERRELL, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.