LOUIS STERN, Respondent, *v.* PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, Appellant.

Supreme Court, Appellate Term, First Department, June 27, 1929.

*Beals & Nicholson [John D. Beals, Jr.,* of counsel], for the appellant.

*Charles L. Fleece,* for the respondent.

BIJUR, J. This action involves the single question — whether the payee of a check whose name has been forged can recover the amount from the drawee bank or the intermediate parties who have cashed the check unless he promptly communicates to them all information he obtains for the purpose of enabling such parties possibly to recoup their loss.

In this case the plaintiff payee's name was forged about June 1, 1928. On June 12, 1928, plaintiff began an action against one Handler, who had cashed the checks for the forger and had deposited them in his bank, the defendant, which acted as mere collecting bank, although it appears to have been consolidated about this time with one of the drawee banks — a circumstance which is wholly negligible. On September tenth a judgment was recovered by plaintiff against Handler, which has not been satisfied. Although plaintiff during the course of the trial learned all the details of the transaction he did not communicate with defendant until November twenty-fourth, when he demanded payment, which was refused, whereupon the present action was begun on December 8, 1928. It was conceded that defendant bank was wholly innocent, also that Handler had on deposit with it between June 1, 1928, and September 15, 1928, a sum sufficient to cover the face value of these checks.

Defendant, appellant, relies on the cases of *Annett* v. *Chase National Bank* ([1921] 196 App. Div. 632) and *Brown* v. *People's National Bank* ([1912] 170 Mich. 416.)

In the *Annett* case plaintiff's name as payee was indorsed on the check in October, 1919, by a forgery consummated by his attorney,

who collected the proceeds through another bank, defendant being the drawee. At the end of December, 1919, plaintiff was apprised of the forgery and endeavored to secure the proceeds from the forger. When that effort failed, he made further inquiries with the result that about February 1, 1920, he learned all the details of the transaction. About March thirtieth he called on defendant, which was the latter's first intimation of the irregularity. An examination of the Annett record on appeal discloses that the case was tried and briefed by the plaintiff on the theory that although his " negligence " would defeat the action, such negligence was a question of fact for the jury under the circumstances; and by the defendant on the claim that the conduct of the plaintiff in failing to notify the defendant for a period of sixty days after he had acquired full information was tantamount to a ratification of the act of the forger or constituted the forger, as matter of law, the agent of plaintiff. The question of plaintiff's negligence was left to the jury, which found in his favor. The Appellate Division, in substance, reversed the finding, holding that a delay of sixty days constituted negligence as matter of law. Not the slightest reference was made either at the trial or on the appeal to the fact that the plaintiff was the payee and not the drawer of the check. All the cases cited by the defendant were either cases in which a depositor (drawer) was the plaintiff and his own bank the defendant, or where the defendant was the maker of commercial paper or the issuer of currency, and held bound *on inquiry* to acknowledge or deny the genuineness of his signature thereto. The two classes are represented, respectively, by *Leather Manufacturers' Bank* v. *Morgan* ([1886] 117 U. S. 96), and *Gloucester Bank* v. *Salem Bank* (17 Mass. 33). The *Annett* case was manifestly decided on the theory on which it was tried below and briefed on appeal.

In the *Brown* case the record on appeal is, of course, not available, but from the opinion it appears that the case was tried on the same general theory as the *Annett* case, the decision adverse to the plaintiff being based on " equitable estoppel " instead of " negligence." The court said, speaking of plaintiff's representative: " It was his duty to speak and he failed to speak," but no suggestion appears to have been made that it was the payee of a check and not the drawer who was suing, and that in the former case there is no such duty. This is the more extraordinary because in the *Brown* case the action was not against even the drawee but against a mere collecting bank. These two are the only cases in which the right of a payee whose name has been forged has been held to have been defeated under such or similar circumstances.

Both actions were based on conversion, which is the recognized remedy under the circumstances. (*Standard S. S. Co.* v. *Corn Exchange Bank*, 220 N. Y. 478; *Burstein* v. *People's Trust Co.*, 143 App. Div. 165; *Wolfin* v. *Security Bank*, 170 id. 519, 520; *Independent O. M. Assn.* v. *Bank*, 311 Ill. 278; *Good Roads Machinery Co.* v. *Broadway Bank*, 267 S. W. 40; 14 A. L. R. 764, 767; Burdick Torts [4th ed.], § 362, p. 418; Brannan Neg. Inst. Law [4th ed.], § 189, p. 907.)

While it has been held universally that the drawer of a check owes to his own (drawee) bank the duty of examining the monthly account and accompanying vouchers and reporting forthwith forgeries of his own signature or any other irregularities of which he may thus become aware, this duty, as explained in *Leather Manufacturers' Bank Case* (*supra*, 106, 107), arises out of the customary practice of London merchants and banks (*Devaynes* v. *Noble*, 1 Meriv. 530, 535), which the Supreme Court held was wholly applicable in this country. The reasonableness of this requirement as established by custom had already been recognized in this State in *Frank* v. *Chemical National Bank* ([1881] 84 N. Y. 209, 213). But no such custom has been even suggested in respect of the payee of a check. Indeed, it is almost impossible to surmise how it could ever have arisen in view of the fact that the payee stands in no legal relation to the drawee and still less to collecting banks or other parties who may, though innocently, have facilitated the collection of the proceeds by the forger.

Concededly there is no privity between the payee and the drawee. (*Ætna National Bank* v. *Fourth National Bank*, 46 N. Y. 82, 87, 90; *First National Bank* v. *Whitman*, 94 U. S. 343.) (See, also, 14 A. L. R. 764; 4 Am. & Eng. Ency. of Law [2d ed.], 226; Prof. Aigler in 38 Harvard Law Rev. 857, 884.) In a few jurisdictions where a contractual relation between the payee and the drawee was held to exist, it was on the theory that there had been effected by the making of the check an assignment of the drawer's funds, and in some instances that there had been an " acceptance " of the check by the drawee bank, indicated by its payment — even if to a wrong party. Regardless of the soundness of these theories, they have been rendered obsolete by the provisions of the Uniform Negotiable Instruments Law, respectively section 189 (section 325 of the New York law) and section 132 (section 220 of the New York law). Consequently the action by the payee against the drawee bank is one between parties who are contractual strangers to one another.

In a case quite similar to the one under consideration, the Supreme Court of Illinois in *Independent O. M. Assn.* v. *Bank* (311 Ill. 278,

283) said: " Since defendant in error [plaintiff payee] was under no legal duty to give notice to plaintiff in error [defendant " collecting " bank], its failure to exercise care in that regard is not negligence in law."

In *Hamlin* v. *Sears* (82 N. Y. 327, 331) our Court of Appeals said: " When the property of one man is wrongfully taken and sold by another, in his own name and for his own benefit, must the owner, when he afterward discovers the wrong, make efforts to reclaim his property, or notify the purchasers of his claim at the risk of losing his property? There is no authority holding that such a duty rests upon the owner of property wrongfully taken and converted. The mere silence of the owner, under such circumstances, will not bar his claim, if it be short of the time prescribed in the statute of limitations. The rule of *caveat emptor* applies, and the purchaser must see to it that he buys of one who owns the property or has authority to sell."

There can be neither negligence, nor estoppel based on negligence, in the absence of a legal duty. In *People's Trust Co.* v. *Smith* (215 N. Y. 488, 491) the court, per CARDOZO, J., said: " Estoppel, therefore, cannot be built in this case upon any representation that was *intended* by the true owner. It must be built, if at all, upon the owner's negligence. To make out an estoppel on that ground it is not enough to show that the owner was careless. He must have been careless in respect of some duty owing to the plaintiff or the public (*Knox* v. *Eden Musee Am. Co.*, 148 N. Y. 441, 462; *Swan* v. *N. B. Australasian Co.*, 2 H. & C. 181). Neither of these elements is present in the case at hand." (See, also, Spencer Bower Estoppel by Representation, §§ 75, 84, 86, 94; *Arnold* v. *Cheque Bank*, L. R. 1 C. P. Div. 578; *Baxendale* v. *Bennett*, L. R. 3 Q. B. Div. 525; *M'Kenzie* v. *British Linen Co.*, L. R. 6 App. Cas. 82, 100; *Thompson* v. *Simpson*, 128 N. Y. 270, 288, 289; *Trustees, etc., of Brookhaven* v. *Smith*, 118 id. 634; *White* v. *Continental National Bank*, 64 id. 316, 321; *Muller* v. *Pondir*, 55 id. 325, 334.)

It is possible that in the course of time the doctrine may be consciously developed that the payee of a check owes the drawee or others some duty under the circumstances here presented, but as Professor Leon Green says, in 28 Columbia Law Review, 1038: " But whatever may be the reasons, when a litigant asks a court to do some new thing which would break into the integrity of its own scheme of things he must make a clear case and be able to show the way out before he even reaches a competing basis with a familiar method."

In this connection I cannot avoid the thought that the adoption

of such a rule would necessarily involve the invention of an altogether new theory for " disseizin of chattels " (to adopt the terminology of Professor Ames, 3 Harvard Law Rev. 23), after our courts have held directly that there is no such duty. (*Hamlin* v. *Sears, supra.*) Moreover, since trover and replevin are practically interchangeable remedies (*Marshall* v. *Davis*, 1 Wend. 109; Ames' Lectures on Legal History, 87), we should be driven to the rather revolutionary notion that the owner of a chattel which has been stolen from him cannot regain possession without compliance with an elaborate system of rules requiring on his part watchfulness, industry and promptness in notifying all possessors and perhaps possible possessors of the risk to which they have subjected themselves. Indeed, one sentence in the *Brown Case* (*supra*) suggests still further complexities and extension of duty: " She had no positive knowledge of the forgery of her endorsement until after that time, but did know of enough facts *to put a reasonable person on inquiry.*"

Of course, nothing which I have said is intended to suggest any disregard of the application of the doctrine of estoppel to cases where an owner " stands by " without protest while his property is being disposed of by another and the purchaser has been thus " lulled into security." (*Carpenter* v. *G. A. Ins. Co.*, 135 N. Y. 298, 305; Spencer Bower, *supra*, § 77; Ewart Estoppel, 26, 133.)

Finally, there has been some suggestion that the judgment procured by plaintiff against Handler was an election to hold the latter instead of the present defendant or in some way discharged the claim against defendant. It is not questioned that plaintiff may sue in conversion the several parties who have, though successively, committed that offense. The recovery of a judgment against the first wrongdoer is no bar to an action against the subsequent ones unless the earlier judgment has been satisfied. (*Burstein* v. *People's Trust Co.*, 143 App. Div. 165; Pollock Torts, 327, 364, and cases there cited; Ames' Disseizin of Chattels, 3 Harvard Law Rev. 318, 323, 326, note 51.)

Judgment affirmed, with twenty-five dollars costs, with leave to appellant to appeal to the Appellate Division.

All concur; present, BIJUR, CALLAHAN and PETERS, JJ.