LEO W. THEELKE v. NORTHERN STATES POWER COMPANY AND ANOTHER.[1]

August 10, 1934.

Nos. 29,941, 29,942.

[1]Reported in 256 N. W. 236.

 

A. *William Groth* and *Cyrus Erickson*, for appellant Northern States Power Company.

J. B. *Pattison*, for appellant Zapp State Bank.

*Moonan & Moonan* and *Gallagher, Madden & Gallagher*, for respondent.

LORING, *Justice.*

In a replevin action to recover possession of two checks aggregating $5,475 in amount, plaintiff had a directed verdict against both defendants, and each of them has appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

In April and May, 1928, the plaintiff was the owner of 50 shares of the preferred stock of the Northern States Power Company, then of the market value of $109.50 per share. He was also the owner of a few shares of Diamond Motor Parts Company stock. One of the stock salesmen engaged in selling stock of the Diamond company, by the promise of large dividends, induced him to purchase two more blocks of the Diamond company stock and, as plaintiff claims, to put up as collateral the 50 shares of Northern States Power Company preferred. Plaintiff claims that he gave his note, payable in 90 days, for the Diamond company stock purchased on each of the two occasions upon which the stock was sold to him. The books of the Diamond company show the receipt by them of no such notes. The Diamond company stock was delivered to him as in the case of cash purchases. The certificates of Northern States Power Company preferred stock were assigned by plaintiff in blank and turned over to the salesman at the time that the orders were given for the Diamond company stock. It seems that the power company customarily repurchased its preferred stock when the same was offered to it, and the Diamond company promptly offered to the power company the stock which had been delivered

to the Diamond company by the plaintiff. Checks on the defendant bank for the market value of the stock were made and executed by the power company and delivered to the Diamond company, but were payable to plaintiff according to the established practice of the company to make such checks payable to the record owner of the stock.

It appears that the Diamond company in 1924 obtained permission of the securities commission to sell its stock in this state, but that such permission or license had been revoked sometime prior to the sale to plaintiff here under consideration.

The plaintiff states that in July, 1928, he discovered that his power company stock had been transferred, and he made complaint to the securities commission with reference to the transaction by which he acquired the Diamond company stock. They held a hearing in September, and at that hearing he saw photostatic copies of the checks with the indorsements thereon that had been issued by the power company in payment for his stock. These checks had been indorsed with his name by someone other than himself and without authority from him, in one case probably by the salesman, in the other by a Diamond company clerk upon advice of counsel. However, he kept the Diamond company stock and made no effort to rescind the sale or to obtain a return of the notes which he claims to have given. He did not notify either of the defendants that the indorsements were forged but allowed the entire matter to rest until July, 1932, when he brought this action. In the meantime the Diamond company had gone into the hands of a receiver. The checks given in May, 1928, with the plaintiff's name as payee had been promptly cashed by the Diamond company after plaintiff's name had been indorsed thereon. They were evidently deposited with the American National Bank of St. Cloud, with which the Diamond company did business, and were transmitted in due course, with the American National Bank's indorsement thereon, to the defendant Zapp State Bank, which promptly charged them to the account of the Northern States Power Company, to which company they were delivered about June 1, 1928, as canceled vouchers.

There is no evidence in the record that the power company had any knowledge that the plaintiff's stock in that company was pledged as collateral with the Diamond company, but the evidence shows that the company had no knowledge of any such arrangement and that it dealt with the Diamond company as a purchaser in good faith, the Diamond company having possession of the stock certificates assigned in blank and thus having the indicia of both the legal and equitable title thereto. ·

While the plaintiff's story as to the power company stock having been put up as collateral is far from convincing, we may assume for the purposes of this opinion that the Diamond company was a pledgee of that stock. While the sale to plaintiff of the Diamond company stock may have been an illegal transaction as between the parties, such illegality would not as to these defendants taint the sale by the Diamond company to the power company of the stock of the latter company in the usual course of business. Plaintiff had clothed the Diamond company with the indicia of title and was not in a position to question the title of a *bona fide* purchaser from the Diamond company. In fact, by bringing this suit in an attempt to obtain the proceeds of that sale plaintiff has ratified it, and as between these parties the situation stands the same ,as if the Diamond company had unconditional authority to sell the plaintiff's stock.

Without going into the question of a pledgee's authority to indorse checks payable to the pledgor where it has made an authorized sale of the pledged property, the question arises whether by his conduct subsequent to the so-called unauthorized indorsements plaintiff has ratified and acquiesced in the indorsement so made by the representatives of the Diamond company and whether he is now estopped from questioning the authority of those who indorsed his name to the checks in so far as a civil action is concerned.

If plaintiff's acts amounted to a ratification, he is then in the same situation as he would have been if he had authorized the indorsement, and he has no right to the possession of the checks. As far as the Diamond company was concerned, he treated the transaction as a payment to it of the money which he owed it. If any

notes were given by him to that company, he did not seek either to take them up by payment or to rescind the transaction and to obtain their return. He allowed the matter to rest just as if he had authorized the indorsements. When in September, 1928, he saw the photostatic copies of the checks together with the indorsements thereon, he made no move whatever to notify the defendants of the forgery or to demand the possession of the checks or to recover from the bank for having cashed the checks with the forged indorsements. In July and September, 1928, the Diamond company was a going concern. In January, 1929, it went into the hands of a receiver. From the record we understand that it is now entirely out of business. Consequently the defendant bank has been prejudiced by the delay, and the plaintiff is estopped to set up the forgery.

The maker of the checks was justified in delivering them to the Diamond company, which had apparent title, legal and equitable, to the stock. It was charged with no duty to see that the checks did not fall into the hands of a forger. It was not at fault in accepting the debit of the checks against its account. The indorsement of the American National Bank was a guaranty of the genuineness of plaintiff's name as indorser. The Zapp bank so accepted it. Common business honesty on plaintiff's part would have required him to act promptly upon discovery of the forgery and to have apprised the bank so that it might recoup itself from loss. Brown v. Peoples Nat. Bank, 170 Mich. 416, 136 N. W. 506, 40 L.R.A. (N.S.) 657. Instead of so doing, he stood by in silence after he made the discovery and allowed defendants to believe his signature genuine and to lose their chance of recovery against the unauthorized indorser. We are aware that the appellate division of the New York supreme court has held that the payee whose indorsement is forged, not being in privity with the bank which pays on the indorsements, is never estopped from recovering from the bank. Stern v. Manhattan Co. 134 Misc. 351, 235 N. Y. S. 634. We prefer the Michigan rule as the more just. It appears to have been recognized by this court in McFadden v. Follrath, 114 Minn. 85, 88, 130 N. W. 542, 37 L.R.A. (N.S.) 201. The record here shows that neither of the defendants was aware of the forgery until the bringing of this

action over four years after it had been committed and nearly four years after the plaintiff knew the exact history of the checks. In the meantime the Diamond company had become irresponsible. In our opinion, plaintiff is in the same position as he would have been had he himself indorsed the checks. He is estopped from denying the authority of those who did indorse, and in effect he has ratified the unauthorized action. Consequently he has no property in the canceled checks. As said by Lord Campbell in Cairncross v. Lorimer, 3 Macq. 827, 830 (Scotch Appeal Cases):

"If a party having an interest to prevent an act being done, has full notice of its having been done, and acquiesces in it, so as to induce a reasonable belief that he consents to it, and the position of others is altered by their giving credit to his sincerity, he has no more right to challenge the act, to their prejudice, than he would have had if it had been done by his previous license."

The orders appealed from must be reversed with directions to enter judgment in favor of the defendants.

*I. M. OLSEN, Justice,* took no part.

[1]Reported in 256 N. W. 233.