LENA SOMA, Appellant, *v.* GEORGE HANDRULIS, Defendant, and SARAH ALKOFF et al., Respondents.

Argued January 27, 1938; decided March 8, 1938.

*Otho S. Bowling* and *Robert H. Elder* for appellant. The check indorsed " for deposit Lena Soma " was non-negotiable. For that reason the thief could confer no title on the Federal Reserve Bank, directly or indirectly, and the bank's act in collecting the check and forwarding the proceeds to those not entitled thereto was conversion. (*Ballard* v. *Burgett,* 40 N. Y. 314; *Bassett* v. *Spofford,* 45 N. Y. 387; *Moore* v. *Metropolitan Nat. Bank,* 55 N. Y. 41; *Soltau* v. *Gerdau,* 119 N. Y. 380.) Plaintiff is not estopped from denying ratification because she did not promptly notify the Federal Reserve Bank of the wrong

perpetrated upon her. The doctrine of estoppel by silence is one which is implied when there is a duty to speak, and when the third party acts to his disadvantage relying upon that silence. (*People's Trust Co.* v. *Smith,* 215 N. Y. 488; *Stern* v. *President of Manhattan Co.,* 134 Misc. Rep. 351; 228 App. Div. 616; *Hamlin* v. *Sears,* 82 N. Y. 327.)

*Walter S. Logan* and *Robert H. Brome* for Federal Reserve Bank of New York, respondent. The Globe Bank, as indorsee in possession of the check indorsed " For deposit Lena Soma," was thereby empowered to collect the check as agent for plaintiff; defendant Federal Reserve Bank received and collected the check as subsequent agent collecting bank in reliance on the Globe Bank's authority to collect; the acts of defendant Federal Reserve Bank were entirely consistent with plaintiff's restrictive indorsement and with her ownership of the check as indicated by such indorsement, and it cannot be held liable for default of the Globe Bank. (*Haskell* v. *Avery,* 181 Mass. 106; *Carson* v. *Federal Reserve Bank,* 254 N. Y. 218; *Doubleday* v. *Kress,* 50 N. Y. 410; *Baurhenn* v. *Fidelity & Deposit Co.,* 114 N. J. L. 99.) Defendant Federal Reserve Bank had no notice that proceeds would not be paid to plaintiff. (*Cohn* v. *Trade Bank,* 146 Misc. Rep. 771; 240 App. Div. 966; *Coopersmith* v. *Maunz,* 227 App. Div. 119.) Plaintiff is estopped to assert lack of authority in defendant Handrulis to deposit the check for collection, or in the Globe Bank to collect it. (*Bassett* v. *Spofford,* 45 N. Y. 387; *Moore* v. *Metropolitan Nat. Bank,* 55 N. Y. 41; *Soltau* v. *Gerdau,* 119 N. Y. 380; *National Safe Deposit Co.,* v. *Hibbs,* 229 U. S. 391; *Union Trust Co.* v. *Oliver,* 214 N. Y. 517; *MacAndrews & Forbes Co.* v. *United States,* 23 Fed. Rep. [2d] 667; *Loomis* v. *Downs,* 26 Ill. App. 257; *Baurhenn* v. *Fidelity & Deposit Co.,* 114 N. J. L. 99; *Shapiro* v. *Capital Bakers,* 17 Fed. Supp. 3; *People* v. *Bank of North America,* 75 N. Y. 547; *Salen* v. *Bank of State of New York,* 110 App. Div.

636.) Plaintiff's subsequent action and silence, with full knowledge of all material facts, constitute ratification of the collection of the check, and also estop her from now asserting a claim against defendant Federal Reserve Bank. (*Hughes* v. *Neal Loan & Banking Co.*, 97 Ga. 383; *Roberts* v. *Bank of Eufaula*, 20 Ga. App. 221; *Wardrop* v. *Dunlap*, 1 Hun, 325; 59 N. Y. 624; *Goldstein* v. *Tank*, 73 Misc. Rep. 300; 149 App. Div. 341; *Fatta* v. *Edgerton*, 137 N. Y. Supp. 226; 157 App. Div. 852; *Leviten* v. *Bickley, Mandeville & Wimple*, 35 Fed. Rep. [2d] 825; *Kunglig Jarnvagsstyrelsen* v. *National City Bank*, 20 Fed. Rep. [2d] 307; *Wilkins* v. *Waldo Lumber Co.*, 130 Me. 5; *Rothschild* v. *Title Guarantee & Trust Co.*, 204 N. Y. 458.)

*Irvin E. Klein* for Sarah Alkoff, respondent. Assuming plaintiff's testimony is credible, nevertheless, plaintiff, by her conduct, is estopped from recovering as against the defendant Alkoff. (*Matter of McArdle*, 140 Misc. Rep. 257.)

RIPPEY, J. This is an action for conversion. The case was submitted to the jury as against the defendant Handrulis only. After the jury had returned a verdict in favor of the plaintiff as against Handrulis, the trial court set the verdict aside and granted a new trial as to him. The question of the correctness of that result is not before this court. The complaint was dismissed at the close of plaintiff's case as against the defendant Federal Reserve Bank and at the close of all the testimony as against the defendant Sarah Alkoff. Judgments of dismissal as to those defendants were affirmed by the Appellate Division, but they have certified to us that a question of law is involved which ought to be reviewed by this court.

Except for admissions in the pleadings and stipulated facts, the only evidence produced by plaintiff was her own testimony. She lived in Yonkers, New York. She was an illiterate Galician — being able neither to read

nor write — had only a slight understanding of the English language and was employed as a weaver in a Yonkers carpet factory. In July, 1931, she sold a piece of property which she owned and which was located in the city of Yonkers to one Martha Thomas, and the deal was closed at the home of the purchaser at about three-thirty P. M. on the afternoon of Friday, July 31, 1931. Present at the closing were the purchaser and her mother, the plaintiff and one Dora Jungman, an attorney, the associate of the attorney who represented the purchaser on the closing of the transaction. A check for $9,947.26, that being the net amount coming to plaintiff from the sale, was delivered to her by this attorney. It was dated August 1, 1931, payable to her order, signed by Martha Thomas and drawn on the Westchester Trust Company of Yonkers, New York. Plaintiff had a deposit account at the Yonkers Savings Bank and presumably intended to deposit the check in that account. But the check was delivered to her after banking hours, after the bank had closed for the day, and Miss Jungman wrote on the back of the check, in the presence of the plaintiff and with her authority, the words " for deposit Lena Soma " and at the time stated to plaintiff that no one could cash the check except herself with such an indorsement. She, nevertheless, told plaintiff to deposit the check as soon as possible.

During the evening of July 31st George Handrulis, a real estate operator with whom plaintiff had become acquainted some fifteen days before, took her to Brooklyn, where he lived, and induced her to turn the check over to him, persuading her that she might lose it or that someone might steal it from her if she retained it. He agreed to put it in his safe for safe-keeping until the following (Saturday) morning, when he was to return the check to her. Instead of doing as he agreed, he caused the check to be indorsed by the defendant Sarah Alkoff and deposited by her on August 1, 1931, in her account

in the Globe Bank and Trust Company, Brooklyn, New York. The Globe Bank was a member bank of the Federal Reserve System. It thereupon twice stamped its indorsement on the check below the signature of Sarah Alkoff and delivered it, at four-ten P. M., August 1, 1931, to the defendant Federal Reserve Bank of New York for collection for the account of the Globe Bank. The Federal Reserve Bank thereupon presented it to the Westchester Trust Company on August 4th, received payment from the payee bank and paid the proceeds of the collection over to the Globe Bank, which, in turn, credited the same to the account of the defendant Sarah Alkoff. On August 11th and subsequently, the defendant Alkoff gave Handrulis checks on her account on which he withdrew the proceeds of the misappropriated check. The plaintiff testified that she did not authorize Handrulis to deposit the check in the Globe Bank or to cash it. She was not a depositor in the Globe Bank and had no transactions with it. She had no transactions with Sarah Alkoff and did not know her. She had no transaction with the Federal Reserve Bank of New York. She made no demand on that bank to reimburse her for her loss before commencing this action.

Before the close of plaintiff's case, the defendants attempted to show, upon the cross-examination of plaintiff, that she had voluntarily surrendered the check to Handrulis and had authorized him to collect and use the proceeds as a loan. It cannot be said, as matter of law, that they made any progress. Likewise, defendant bank asserts that her testimony indicates that she ratified the transactions of all parties dealing with the check. It was brought out during her examination that, on Tuesday, August 4, 1931, she demanded from Handrulis the return of her check. He then told her he had cashed it. She asked him what she could do then, whereupon he handed her a note signed by himself and told her that it was just as good as the money. She demurred and told him that she did not want it. She said that after an argu-

ment she finally took it, thinking that if she did not she would "have nothing to show." He told her that she should not worry and that he would return the money to her in six months. A day or so later she again demanded the check, and her testimony as to his reply was as follows: "He says that he cashed it and he hasn't got any check with him. The check is cashed, so he says, 'Don't worry, I am honest man, and I will return every penny back to you, don't be afraid.'" At the time, unknown to plaintiff, Handrulis was under indictment for grand larceny in the first degree for having stolen $3,955 from the Kensington Bank of Brooklyn. The indictment was found October 27, 1927. He was subsequently convicted on January 20, 1932, and sent to Sing Sing Prison. Since his release, plaintiff has been trying to secure money from him to reimburse her for her loss. She has received six hundred dollars but there is no evidence that the money was collected or applied on the note in question. The note, plaintiff says, was not accepted by her in excuse for or as satisfaction of the theft or as part of a loan transaction, but merely as evidence, for otherwise, she thought, she "would have nothing to show." A necessary element of ratification is intent (*Glenn* v. *Garth*, 133 N. Y. 18, 35; *Merritt* v. *Bissell*, 155 N. Y. 396, 400). If there was evidence of ratification in the above or other testimony produced while plaintiff had the case, it presented merely a question of fact. It did not form the basis for a nonsuit. Inasmuch as the nonsuit was granted on motion of the defendant Federal Reserve Bank at the close of plaintiff's case, as to it the testimony of witnesses produced by defendants Handrulis and Alkoff cannot be considered. Nor is there any evidence upon which the nonsuit as to the bank may be sustained on the theory that plaintiff is estopped from denying ratification by her failure promptly to notify the defendant bank of her loss. Under the facts in this case, she had no duty to speak (*Stern* v. *President, etc., of Manhattan Co.*, 134 Misc. Rep. 351; affd.,

228 App. Div. 616), nor did the defendant bank act to its detriment, on the strength of her silence (*Hamlin* v. *Sears*, 82 N. Y. 327, 332).

From the testimony adduced by plaintiff before the nonsuit it thus appears that the check was delivered to Handrulis solely for the purpose of safe-keeping, that plaintiff did not authorize him to cash it, or to deposit it for collection, or to use it for any purpose. Handulis had mere naked possession of it for a special purpose. His conversion of the proceeds under the recited facts constituted larceny, and no question of negligence or estoppel by the owner can arise (*Bassett* v. *Spofford*, 45 N. Y. 387). The defendant Alkoff is in no better position than Handrulis. She took the check with definite notice that it still belonged to the plaintiff and was liable for conversion. She has pleaded neither waiver, estoppel nor ratification. She set up in her answer that the plaintiff loaned the money to Handrulis and that he had authority to collect the check. Both she and Handrulis were entitled to defend, of course, upon the ground alleged, but whether the evidence which was produced on the trial or may be produced might sufficiently establish that defense is solely a question of fact for the jury.

The Globe Bank and the defendant bank were likewise liable for the conversion of the check, subject to any appropriate defenses that may be interposed and established.

(1) The Globe Bank had no *actual* authority to receive or collect the check for plaintiff or any one else. The indorsement by the payee " for deposit " was not an indorsement in blank. The check was not thereby negotiable in the hands of any person to whom it might come (2 Bouvier's Law Dictionary [Rawle's Third Revision, 8th ed.], p. 1546). It was not payable to bearer, could not be negotiated by delivery, and no title was transferred to any one. It still remained, at least until it was paid, the property of the plaintiff (*Bank*

*of Clarke County* v. *Gilman,* 81 Hun, 486; affd., 152 N. Y. 634). The indorsement was *restrictive* and prohibited further negotiation for any purpose except for collection for deposit in her account (Neg. Inst. Law, [Cons. Laws, ch. 38], §§ 66, 67, 350-c; *Cohn* v. *Trade Bank,* 146 Misc. Rep. 771; 240 App. Div. 966; *Hermann* v. *Union Bank,* 1 Rob. [La.] 222) in a bank which she herself selected. Plaintiff did not specify in the indorsement that it might be deposited with *any* bank nor with any bank with which she had not established the relation of depositor. She authorized no one to deposit the check for any purpose with the Globe Bank or with Alkoff or with the Federal Reserve Bank. This the Globe Bank, Alkoff and the Federal Reserve Bank knew when they severally received the check. The indorsement " for deposit " gave notice of its restrictive and non-negotiable character generally and of *plaintiff's continued title* to all parties into whose hands the check might come (*Bank of Clarke County* v. *Gilman, supra; Manufacturers Nat. Bank* v. *Continental Bank,* 148 Mass. 553; *Commercial Bank* v. *Armstrong,* 148 U. S. 50, 56, 57).

(2) The Globe Bank acquired no title to the check. It did not pretend or assume to acquire any title directly from plaintiff. It did not deposit it in the name of plaintiff; neither did it receive the proceeds for plaintiff nor pretend to do so. It neither had nor pretended to have any relations with plaintiff whatsoever. It received the check from Alkoff, who was neither the owner of the check nor the agent of the owner, and deposited the check in Alkoff's account and thereafter paid out the proceeds to her or on her order. It dealt with the check at its peril (*Bank of Clarke County* v. *Gilman, supra; Soltau* v. *Gerdau,* 119 N. Y. 380, 397) as did any one subsequently handling it with notice of its non-negotiable character.

(3) Nor did the indorsement confer upon the Globe Bank apparent authority to receive or collect the check; it was, therefore, necessary for defendants to show actual

authority for the bank and Alkoff to so deal with it (*Johnson* v. *Donnell*, 90 N. Y. 1). This they did not do. On the contrary, it was established that the Globe Bank put the check through for collection and collected the check, not for the owner or with her authority, but for Alkoff, who, by the very terms of the indorsement had no title to the check or right to name a collecting agent or receive any of the proceeds.

(4) The indorsement of Sarah Alkoff was neither special, restrictive nor conditional, but was rather an indorsement in blank without any indication by appropriate words that she indorsed in any other capacity and represented to those who thereafter came into possession of the instrument that she was the owner (*White* v. *Continental Nat. Bank*, 64 N. Y. 316, 320). The Federal Reserve Bank must rely on that rule and assert that Alkoff had title as a holder in due course for its authority to undertake to collect on the check and be relieved from liability for conversion. But the indorsement of the payee told that bank that Sarah Alkoff was not the owner. Her indorsement·destroyed its negotiability for any purpose. To constitute notice of defect in the title of one negotiating the instrument or of infirmity in the instrument, a person subsequently dealing with it "must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." (Neg. Inst. Law, § 95.) Here, actual knowledge of the non-negotiable character of the check was brought home to the collecting bank. It is said that negligence is not enough and that bad faith must exist (*Coopersmith* v. *Maunz*, 227 App. Div. 119). Even so, gross carelessness may constitute evidence of bad faith (*Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 191). Even if the actual good faith of the Federal Reserve Bank in dealing with the instrument is not questioned, if the facts shown by the instrument itself should have led it to inquire, and by inquiry it would have discovered the

true situation, in a commercial sense it acted in bad faith and the law will withhold from it such protection as it would otherwise have been entitled to receive (*Hoberg* v. *Sofranscy*, 217 App. Div. 546; *Ward* v. *City Trust Co.*, 192 N. Y. 61, 69, 70). We think the indorsement by the payee showing that she retained legal ownership of the check and its proceeds, coupled with the indorsement in blank of Sarah Alkoff importing ownership in her, put the bank on inquiry. Inquiry would have disclosed the irregular transaction and would have shown the theft of the check. Failure to make this inquiry establishes, in a legal and commercial sense, bad faith on the part of the bank and makes it liable to plaintiff for the diversion and loss of the check and its proceeds (Neg. Inst. Law, §§ 94, 95), even within the reservations of limited liability of a collecting bank under the Negotiable Instruments Law (§ 350-d) and section 5 of Regulation J of the Federal Reserve Board.

(5) Defendant bank asserts that no claim was made at the trial on behalf of plaintiff that " Alkoff's indorsement was any notice to defendant Federal Reserve Bank that the check had not been deposited by plaintiff." The evidence on the subject tended to indicate the contrary. If counsel means that plaintiff's counsel did not argue that point at the time the motion for a new trial was made, it is a sufficient answer, if the point is of any importance, to say that the trial court gave him little or no opportunity to argue anything.

The Federal Reserve Bank, in its answer, set up four separate affirmative defenses. The first defense was in substance that it took the check solely as collecting agent for the Globe Bank without knowledge, information or notice as to any wrongful taking or conversion of the check and that, upon performing its duty under the Federal Reserve Act as collecting agent of making the collection and turning the proceeds over to the Globe Bank, it had performed its full duty and had no further

liability. In view of the definite affirmative notice of non-negotiability for any purpose furnished by the indorsement of plaintiff " for deposit " and by the indorsement of Sarah Alkoff in blank, that defense was not available. Its second defense was that the check had been turned over to Handrulis by plaintiff in pursuance of an agreement whereby she loaned the money to Handrulis and accepted his note for the amount of the loan, that he was rightfully in possession of the check, had authority to negotiate it, and that the Globe Bank came rightfully into its possession. Its third defense was that the plaintiff, with full knowledge or means of knowledge of all the relevant facts, ratified, confirmed and adopted the acts of the Federal Reserve Bank and is estopped from asserting any claim or cause of action against it. The fourth defense was to the effect that by virtue of the failure of plaintiff to give timely notice to it of the conversion, it had lost its right to reimbursement from the Globe Bank, whose affairs and business had in the interim been liquidated. We have already called attention to the subject-matter and standing of the first and third defenses. We are not here, of course, required to pass upon the validity of any of these defenses. The second defense raised questions of fact for the jury, even upon the state of the record at the close of the plaintiff's case.

The judgments should be reversed as to the defendants Alkoff and the Federal Reserve Bank of New York and a new trial granted as against both defendants, with costs to abide the event.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN and FINCH, JJ., concur; HUBBS, J., taking no part.

Judgment accordingly.