279 F.2d 780
 Jeanne BAUMEL, individually, and as Administratrix of the Estate of John M. Vocale, and John Baumel, an infant, by Jeanne Baumel, his guardian ad litem, Plaintiffs-Appellants,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellee.
 No. 319.
 Docket 26076.
 United States Court of Appeals Second Circuit.
 Argued May 5, 1960.
 Decided June 22, 1960.
 
 1
 Alfred A. Marra, New York City (Turnbull & Bergh, John G. Turnbull, Daniel J. Loughlin, New York City, on the brief), for appellants.
 
 
 2
 John G. Donovan, Galli, Terhune, Gibbons & Mulvehill, New York City (Galli & Locker, New York City, on the brief), for appellee.
 
 
 3
 Before LUMBARD, Chief Judge, MEDINA, Circuit Judge, and JAMESON, District Judge.*
 
 
 4
 JAMESON, District Judge.
 
 
 5
 This is an appeal from a judgment dismissing appellants' complaint in an action to recover (1) the proceeds of a policy of life insurance on the life of John Vocale issued by appellee, in which appellants as widow and infant son of Vocale were named as beneficiaries; and (2) the unused balance of funds alleged to have been deposited with appellee for payment of premiums.
 
 
 6
 The policy (whole life) in the amount of $10,000 was issued January 21, 1953. effective January 14, 1953, for a premium of $222, pursuant to an application signed by Vocale on January 10, 1953.
 
 
 7
 On December 12, 1952, Vocale had applied for a loan from National City Bank, the application reciting that it was for the purpose of paying insurance premiums to "Travelers Ins. Co. * * * $1996, $20,000, 10 Yr. End. Life. Ins." The loan application was signed by Vocale as applicant and Mayer Goldfarb as insurance agent and broker. A check for $1996 was issued by the bank on December 31, 1952, payable to "Travelers Ins. Co. A/C John Vocale" and was mailed to Vocale at his home address. A representative of the bank testified that the words "A/C John Vocale" were used for identification purposes only. There is no evidence of any intention to make the check payable to appellee as trustee for Vocale.
 
 
 8
 The annual premium on a $20,000, 10 year endowment policy for Vocale would have been $1995.40. The endowment policy, however, was never issued. Instead, Vocale applied for and appellee issued the policy in suit, for an annual premium of $222. The premium for the first year was received by appellee on January 12, 1953.[1] On the same date appellee received from Mayer Goldfarb the check for $1996 and another check for $158.56. On January 20, 1953, the proceeds of these two checks, totaling $2154.86, were credited to Mayer Goldfarb's casualty account with Travelers for the month of January. This payment covered 59 items of casualty business identified by the names of casualty policy holders. John Vocale's name was not among them. Vocale had no account with appellee except the life policy in suit.
 
 
 9
 The second annual premium became due on January 14, 1954. It was not paid unless appellee had funds belonging to Vocale which should have been used to pay this premium. On December 24, 1953, appellee mailed to Vocale a "premium due" notice as required by the laws of New York,[2] informing Vocale that if the premium were not paid by January 14, 1954, or within the 31 day grace period, the policy would lapse.
 
 
 10
 Vocale died on December 2, 1954, and appellee was notified of his death. Appellee disclaimed liability on the ground that the policy had lapsed on January 14, 1954, for nonpayment of the premium.
 
 
 11
 It was stipulated in the pretrial order that the sole issue was whether the second annual premium had been paid. Judge Bruchhausen found that it had not been paid and that the policy lapsed for nonpayment of premium.
 
 
 12
 One ground of appeal is error in admitting the testimony of Herman Goldfarb regarding transactions with Vocale, by reason of the provisions of Section 347 of the Civil Practice Act of New York.[3] At the close of Herman Goldfarb's direct testimony the court granted a motion to "strike at this time any conversation with John Vocale," and reserved decision on the motion "as to any other transactions that he testified to." At the close of the trial, the court said: "Disregarding all of the testimony on which I sustained the objection on the ground that it might affect Section 347, there is no question that the premium was not paid on this policy in issue and I therefore find for the defendant, and ask that findings be submitted."
 
 
 13
 Disregarding all of Herman Goldfarb's testimony regarding both conversations and transactions with Vocale, the findings of the trial court are sustained by competent evidence.[4] Additional pertinent evidence includes the following: Most of the casualty premiums due appellee from Mayer Goldfarb resulted from business solicited by Key Service, Inc. and written through Mayer, who was an agent of appellee. Key Service, Inc. was an insurance brokerage firm consisting of Martin Simon and Herman and Seymour Goldfarb, none of whom were agents of appellee. On January 6, 1953, Key Service, Inc. issued two checks for $1000 and $996, respectively, payable to "Cash." On January 5, 1953, Seymour Goldfarb issued a check for $1000 payable to "Cash" and on January 8, 1953, a check for $300 payable to the order of John Vocale. Each of the two latter checks bears Vocale's endorsement.[5] On January 9, 1953, Key Service, Inc. issued a check for $222 payable to "Cash." This check was endorsed, "Herman Goldfarb, Special."
 
 
 14
 It is conceded that appellee had the burden to prove nonpayment of the second annual premium. Appellee made a prima facie case of nonpayment by testimony of its employees and the record of its account with Vocale showing that the second annual premium had not been received. This was sufficient unless the receipt by appellee of the check for $1996 in itself proved that appellee had funds belonging to Vocale available for the payment of the premium.
 
 
 15
 Appellants did not attempt to prove the alleged agreement that Vocale had delivered the $1996 check to be applied on future premiums, but rely upon the check and loan application, which were received in evidence over appellee's objections. There is no evidence that appellee received the check for Vocale's account with appellee. While the stated purpose of the loan for which the check was issued was the payment of premiums on an endowment policy to be issued by appellee, it could not have been used for that purpose. The policy described in the loan application was never issued or even applied for. It is conceded in "plaintiff's statement of facts" in the pretrial order that Vocale changed his mind with respect to the type and amount of insurance desired.
 
 
 16
 The check was mailed to Vocale and presumably received by him. It was received by appellee from Mayer Goldfarb. Vocale having received the check, and Goldfarb having transmitted it to appellee, it must be assumed that Goldfarb acquired the check from Vocale. Pursuant to Goldfarb's instructions, the check was credited to Goldfarb's January account on casualty business entirely unrelated to the life policy issued to Vocale.
 
 
 17
 With testimony showing nonpayment of the premium and the actual use of the $1,996 check, the burden of going forward with the evidence to meet the prima facie case of nonpayment shifted to appellants.[6] Appellants failed to offer evidence to rebut the prima facie case made by appellee. The trial court's finding that, "Vocale did not pay in advance to the defendant the sum of $1996, to be applied by the defendant in payment of premiums upon said policy" is amply justified by the evidence.
 
 
 18
 In the absence of proof that the check was received by appellee as a deposit for the payment of premiums on the policy in suit, the inference that it was to be used to pay some nine annual premiums in advance is not warranted, particularly in view of the positive testimony that the check was transmitted and used for another purpose. Moreover, the checks totaling $1996 issued by Key Service, Inc., coincident with the checks totaling $1300, issued by Seymour Goldfarb and endorsed by Vocale, support the clear inference that the check for $1996 had been transferred by Vocale to one of the Goldfarbs or Key Service, Inc., for purposes other than transmittal to appellee for deposit to pay future premiums on the life insurance policy.
 
 
 19
 Appellants contend, however, that appellee could not legally apply the proceeds of the check in any other way than to the account of Vocale, without showing authority from Vocale to do so. They rely upon cases involving restrictive endorsements[7] and cite authority in support of the rules that "a check diverted from the purpose for which it was given constitutes conversion"[8] and that where a debtor, in making a payment, directs how it shall be applied, the application must be made accordingly.[9]
 
 
 20
 This case does not involve restrictive endorsements on the check. According to the representative of the bank which issued the check, the words "A/C John Vocale" were placed thereon for identification purposes only. The check was received by Vocale. He had the right to direct the manner in which it should be applied. Had he directed that it be deposited for the payment of premiums or otherwise credited to his account, there would be merit in appellants' contention. But appellants have failed to show that Vocale directed that the check be used for this purpose. Appellee received the check from Mayer Goldfarb with nothing thereon to restrict Goldfarb's right to use the check or appellee's right to apply it to Goldfarb's account. In the absence of proof to the contrary, it cannot be inferred that Goldfarb did not have authority to use the check in the manner in which it was used.[10]
 
 
 21
 Appellants claim error in the trial court's failure to make findings of fact with respect to the alleged refund of the sum of $1996, arguing that a finding as to this fact is necessary to "determine the ultimate fact as to whether the second annual premium was paid." It is agreed that no refund was made to Vocale by appellee. Appellants contend that even though it be found that $1300 was refunded to Vocale by others, and that the sum of $222 was used in payment of the first year's premium, appellee has failed to account for the remaining $474.
 
 
 22
 Appellee was not required to account for any refund. There is no evidence that any refund was due Vocale from appellee. Proof of the use made of the check was sufficient in the absence of any evidence in support of appellant's allegation that it was to be applied in the payment of premiums.
 
 
 23
 Appellants claim error in the court's denial of their request for an adjournment to prepare to meet the testimony of Herman Goldfarb. Counsel have failed to show wherein they were prejudiced except for the general statement that they needed more time to prepare for Goldfarb's examination. A short recess was granted, followed by extended cross-examination. The granting of an adjournment was discretionary with the trial court, and no abuse of discretion has been shown.
 
 
 24
 It is appellant's final contention that the trial court erred in refusing to receive in evidence an application for another insurance policy for the purpose of showing prior inconsistent statements of the witness Herman Goldfarb. Particularly in view of our conclusion that the evidence is sufficient to sustain the court's findings disregarding Goldfarb's testimony as to conversations and transactions with Vocale, no prejudice is shown.
 
 
 25
 Judgment is affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation
 
 
 [1]
 The employee who received the premium endorsed on the application attached to the policy, "$222.00 on deposit F.J.G. 1/12/53." He could not say whether the payment was made by cash or check, but testified, "I would say that I received $222.00 exactly."
 The application signed by Vocale on January 10, 1953, recites that he had paid "Travelers" the sum of $222 and held a receipt therefor.
 
 
 [2]
 New York Insurance Law, McKinney's Consol.Laws, c. 28, § 151. Appellee's record card also bears a notation that a letter was written to Vocale on February 17, 1954, calling attention to the fact that the premium had not been paid. There is no evidence that Vocale responded to either the notice of premium due or the letter
 
 
 [3]
 Section 347 of the Civil Practice Act of New York provides:
 "Upon the trial of an action * * * a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise, shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor, administrator or survivor of a deceased person * * * or a person deriving his title or interest from, through or under a deceased person * * * by assignment or otherwise, concerning a personal transaction or communication between the witness and the deceased person * * * except where the executor, administrator, survivor, * * * or person so deriving title or interest is examined in his own behalf, or the testimony of the * * * deceased person is given in evidence, concerning the same transaction or communication. * * *"
 
 
 [4]
 It is clear that the trial court disregarded all of Herman Goldfarb's testimony regarding conversations with Vocale. It is not entirely clear to what extent the court disregarded "transactions" which did not involve such conversations. It seems probable that in reserving a decision as to "other transactions that he testified to," the court had reference to transactions other than those involving either conversations or transactions with Vocale. In any event, in view of our conclusion that other competent evidence is sufficient to sustain the court's findings, appellants have failed to show prejudice, and any error would be harmless within the meaning of Rule 61 of the Federal Rules of Civil Procedure, 28 U. S.C.A
 
 
 [5]
 This is clear from a comparison of the signatures of endorsement of the two checks with the signature on the application for loan
 
 
 [6]
 While the "burden of proof" did not shift, when the appellee made a prima facie case of nonpayment, appellants had the burden of going forward with the evidence to rebut the prima facie case, at the risk of an adverse judgment upon their failure to do so. See 9 Wigmore on Evidence, 3d Ed.1940 §§ 2485, 2487, 2489; 31 C.J.S. Evidence § 110, p. 719; Commercial Molasses Corp. v. New York Barge Corp., 1941, 314 U.S. 104, 110-111, 62 S.Ct. 156, 86 L.Ed. 89; opinion below sub nom. Commercial Molasses Corp. v. New York Tank Barge Corp., 2 Cir., 1940, 114 F.2d 248, 251; Guinan v. Boston, Cape Cod & New York Canal Co., 2 Cir., 1924, 1 F.2d 239, 245
 
 
 [7]
 Hook v. Pratt, 78 N.Y. 371, 34 Am.Rep. 539; Sona v. Handrulis, 277 N.Y. 223, 14 N.E.2d 46
 
 
 [8]
 Comstock v. Hier, 73 N.Y. 269, 29 Am. Rep. 142; Soma v. Handrulis, supra
 
 
 [9]
 Goodman v. Snow, 81 Hun 225, 30 N.Y. S. 672; Bank of California v. Webb, 94 N.Y. 467
 
 
 [10]
 It would have been better practice for appellee to inquire into Goldfarb's right to use the check before accepting it, but its failure to do so does not in itself impose liability. It is significant also that Vocale did not respond to the notice of premium due or subsequent letter from appellee advising him that the policy had lapsed for nonpayment of premium