Bruno E. Low, Respondent, *v.* Merchants National Bank & Trust Company of Syracuse, Appellant.

Third Department, January 13, 1966.

*Melvin & Melvin (Lawson Barnes* of counsel), for appellant.

*Travis, Whiting & Johnson (Harry S. Travis* of counsel), for respondent.

Aulisi, J. This is an appeal from an order and judgment of the Supreme Court at Special Term, Broome County, which denied defendant's motion to dismiss plaintiff's second and third causes of action of the amended complaint. Plaintiff does not appeal from the dismissal of his first cause of action.

The issue is whether the drawer of checks has a cause of action against the collecting bank which paid checks on alleged illegal indorsements receiving funds from the drawee banks which charged plaintiff drawer's respective accounts.

Plaintiff and Anthony R. Bersani were coventurers, owned stock in the Bersani Construction Corporation and Bersani was sole owner of the stock of the Bersani Realty and Construction Co., Inc. Plaintiff and Bersani as coventurers had checking accounts in the First-City National Bank of Binghamton, N. Y., the Franklin National Bank of Long Island and defendant bank. They were indebted to the Bersani Construction Corporation in the amount of $900,000. Between July 2, 1962 and July 17, 1962 plaintiff made out and signed six checks to the order of

the Bersani Construction Corporation totaling $239,726. These were drawn on the First-City National Bank of Binghamton, N. Y. Between January 19, 1962 and July 19, 1962 Mr. Low also drew eight checks on the Franklin National Bank of Long Island to the order of Bersani Construction Corporation in the amount of $516,000. The amended complaint alleges that of the 14 checks all but two were indorsed by "Anthony R. Bersani following which said checks were stamped 'for deposit only' to the credit of Bersani Realty and Construction Co., Inc.," and that the two exceptions were indorsed by "Bersani Construction Corporation, but deposited in the Bersani Realty and Construction Co., Inc., account without stamping thereon the words 'for deposit only'." Plaintiff further alleges that none of the checks reached any account of the payee Bersani Construction Corporation, Bersani having deposited them to the credit of his realty corporation in defendant's bank, and that defendant paid the checks and collected on them from the two drawee banks. He further alleges that as a result of the diversion of the checks the joint venture remained indebted to the Bersani Construction Corporation and that he has been damaged by reason of the fact that Anthony R. Bersani has filed in bankruptcy.

It is contended and alleged by the plaintiff that the defendant is responsible in damage to him for the reason that it guaranteed all prior indorsements on the checks when they were presented to the drawee banks and that "the act on the part of the defendant herein in guaranteeing the endorsements as collecting bank * * * in view of the fact said checks had been made payable to the named payee, namely Bersani Construction Corporation, but with actual knowledge that said checks were being endorsed and in most instances stamped 'for deposit only' to the account of Bersani Realty and Construction Co., Inc., acted in bad faith and was guilty of false and fraudulent representation as to the endorsements and guaranty of the prior signatures". He also argues that a contractual relationship existed between himself and defendant.

We are of the opinion that Special Term properly held that there is no privity of contract between the drawer of a check and the collecting bank. However, we are constrained to disagree with the court on its upholding the amended complaint on plaintiff's allegation of fraudulent representation based on the collecting bank's guarantee of the prior indorsements. Special Term relied on *Ultramares Corp.* v. *Touche* (255 N. Y. 170) where it was held that without privity there could be no action for negligent misrepresentation, but that an action for

fraudulent representation could be maintained in a situation where plaintiff had relied to its detriment on a balance sheet prepared by defendant's accountants for a firm seeking loans and extension of credit. It is our belief that the *Ultramares* doctrine has no place in this case. To justify his theory of fraudulent misrepresentation plaintiff must show that he relied on such representation to his detriment. The basis for this reliance, according to Special Term, is somehow predicated upon the guarantee of indorsements provided for by section 350-c of the Negotiable Instruments Law (the statute applicable at that time). That section provides that a restrictive indorsement '' shall constitute a guaranty by the indorser to all subsequent holders and to the drawee ''. There is no provision in the statute which protects the drawer, and we perceive no other basis upon which any reliance by the drawer can be predicated so as to make appropriate the use of the *Ultramares* rule. There is nothing in article 4 of the Uniform Commercial Code which would alter this conclusion.

This is not to say that plaintiff is necessarily without a remedy. In a proper case, the drawer can obtain relief by bringing suit against the drawee bank with which there is privity and that bank in turn can proceed against the collecting bank on the statutory guarantee afforded by section 350-c of the Negotiable Instruments Law. In a proper case, also, the wronged payee may go against the collecting bank which by reason of the wrongful payment to another stands in a debtor relationship to the payee (see *Henderson* v. *Lincoln Rochester Trust Co.*, 303 N. Y. 27; *Soma* v. *Handrulis*, 277 N. Y. 223; *City of New York* v. *Bronx County Trust Co.*, 261 N. Y. 64). Upon the necessarily incomplete record before us we do not, of course, attempt to determine whether either of these theories is applicable here. It appears to us that in the light of these well-settled causes of action, the advisability of relying on the *Ultramares* doctrine would be doubtful even though the guarantee provisions of said section 350-c of the Negotiable Instrument Law might create a basis to sustain plaintiff's claim. In *Ultramares* there existed a different relationship than we have here. We, therefore, conclude that plaintiff has no action for fraudulent representation. Neither does he have an action against the defendant for conversion or money had and received (*Trojan Pub. Corp.* v. *Manufacturers Trust Co.*, 298 N. Y. 771; see *Stone & Webster Eng. Corp.* v. *First National Bank & Trust Co.*, 345 Mass. 1, for a comprehensive review of the drawer's rights, or lack thereof, against the collecting bank; see, also, Check-Forged Indorsement, Ann. 99 ALR 2d 637).

The judgment and order should be modified, on the law, so as to dismiss the second and third causes of action of the complaint, and, as so modified, affirmed, without costs.

GIBSON, P. J., REYNOLDS, TAYLOR and HAMM, JJ., concur.

Judgment and order modified, on the law, so as to dismiss the second and third causes of action of the complaint, and, as so modified, affirmed, without costs.