UNDERPINNING & FOUNDATION CONSTRUCTORS, INC., Respondent, v CHASE MANHATTAN BANK, N.A., et al., Defendants, and BANK OF NEW YORK, Appellant.

First Department, March 23, 1978

## APPEARANCES OF COUNSEL

*Joseph A. Kilbourn* of counsel *(James R. Sullivan* with him on the brief; *Bigham Englar Jones & Houston,* attorneys), for Bank of New York, appellant.

*Tony Berman* of counsel *(Roger S. Markowitz* with him on the brief; *Berman, Paley, Goldstein & Berman,* attorneys), for respondent.

### OPINION OF THE COURT

YESAWICH, J.

An employee of plaintiff, Underpinning & Foundation Constructors Inc., falsified invoices from plaintiff's suppliers, stole the checks written to pay these false invoices, restrictively indorsed them to the named payees and then deposited them to his own or confederates' accounts maintained with, among others, the defendant Bank of New York (BNY). When these checks were presented BNY, despite the restrictive indorsements, accepted them and applied the proceeds thereof to the credit of accounts other than those indicated in the indorsements. Using this scheme, plaintiff's employee allegedly embezzled over $1,000,000 from his employer. Of that amount checks totaling in excess of $450,000 were deposited with BNY although none of the named payees kept accounts there. When Special Term denied BNY's motion to dismiss the complaint for failure to state a cause of action against it this appeal followed.

██ Plaintiff in its second cause of action, which is directed at BNY, charges the latter with violating the Uniform Commercial Code's standard of care for depositary banks in that it neglected to apply the proceeds of the checks in accordance with the restrictive indorsements and with gross negligence amounting to commercial bad faith because of BNY's failure to inquire when the checks were presented for deposit, in contravention of the restrictive indorsements. Essentially BNY contends a drawer has no right of action against a collecting bank, albeit a depositary bank, and that the draw-

er's remedy when a forged indorsement is involved is to proceed against the drawee bank. Undeniably this is the New York rule in forged indorsement cases. (See, e.g., *Trojan Pub. Corp. v Manufacturers Trust Co.,* 298 NY 771.) But we perceive the issue to be whether a depositary bank, though it is also a collecting bank, owes a duty to the drawer to apply the proceeds of a restrictively indorsed instrument consistently with that indorsement.

■ Under New York's common law collecting as well as depositary banks presented with restrictive indorsements had a duty to inquire and their failure to do so subjected them to liability. In *Soma v Handrulis* (277 NY 223, 233-234) it was observed that: "Even if the actual good faith of the Federal Reserve Bank in dealing with the instrument is not questioned, if the facts shown by the instrument itself should have led it to inquire, and by inquiry it would have discovered the true situation, in a commercial sense it acted in bad faith and the law will withhold from it such protection as it would otherwise have been entitled to receive * * * Inquiry would have disclosed the irregular transaction and would have shown the theft of the check. Failure to make this inquiry establishes, in a legal and commercial sense, bad faith on the part of the bank and makes it liable to plaintiff". Although the liability imposed by *Soma* on an intermediary collecting bank to a payee has since been eliminated (1955 Report of NY Law Rev Comm, pp 98-99) its holding is not that narrowly restricted and through the medium of section 3-206 of the Uniform Commercial Code the duty to inquire still applies to depositary banks. And surely in these times when the doctrine of privity of contract is "not so conclusive as it once was" *(Federal Ins. Co. v Groveland State Bank,* 37 NY2d 252, 258, n 2), the beneficiary of a depositary bank's duty to make that inquiry is any party harmed by the bank's failure to do so.

As against this defendant, the complaint has viability not only under the common law but the Uniform Commercial Code as well for the code enjoins depositary banks to pay or apply value given for restrictively indorsed instruments according to their tenor. (Uniform Commercial Code, § 3-206.) Failure to conform to this statutory standard of care is, at the very least, indicative of bad faith. When the code's obviously strong policy respecting a depositary bank's duty while handling restrictively indorsed items (e.g., Uniform Commercial Code, §§ 3-206, 3-306, subd [d]; § 3-419, subd [4]; § 3-603, subd

[1], par [b]), is contrasted with the bank's very limited liability when paying on a forged indorsement (§ 3-419, subd [1], par [c], subd [3]), we do not believe, at least on the facts so far presented here, that the now less than conclusive doctrine of privity is sufficient to immunize the bank from a direct action by the drawer.

Inasmuch as we view the resolution of this appeal as hinging on BNY's nonobservance of its common law and code duty with regard to restrictively indorsed paper the forged indorsement cases referred to in the dissent are readily distinguishable as is *Titan Air Conditioning Corp. v Chase Manhattan Bank* (61 AD2d 764). Concededly in *Low v Merchants Nat. Bank* (24 AD2d 322) a restrictive indorsement was involved and the court concluded a drawer had no right of action as against a depositary bank. However, the record on appeal discloses that none of the claims being advanced here were raised before the *Low* court or indeed that it was ever urged to consider the impact of article 3 of the code.

And since we find the drawer to be a beneficiary of a depositary bank's duty to inquire and to comply with a restrictive indorsement, *Stone & Webster Eng. Corp. v First Nat. Bank & Trust Co. of Greenfield* (345 Mass 1) is not dispositive. Furthermore because of *Federal Ins. Co. v Groveland State Bank (supra)* a collecting bank is now permitted to assert the drawer's negligence as a defense rendering that aspect of the *Stone & Webster* rationale unpersuasive.

Accordingly, the order of the Supreme Court, New York County (HELMAN, J.), entered July 13, 1977, should be affirmed, with costs.

SANDLER, J. (concurring). In addition to the analysis presented in the opinion of the court, I think it important to stress one aspect of the problem that seems to me critical. In *Soma v Handrulis* (277 NY 223) the court held an intermediary bank liable to a payee where an instrument was collected through it inconsistent with a restrictive indorsement.

In the view that practical aspects of the bank collection process made it important to continue the negotiability of an instrument restrictively indorsed, several sections of the Uniform Commercial Code were carefully designed to avoid liability with regard to the negotiation of instruments bearing restrictive indorsements by an intermediary bank or a payor

bank which is not a depositary bank. Thus, section 3-206 of the Uniform Commercial Code provides as follows:

"(1) No restrictive indorsement prevents further transfer or negotiation of the instrument.

"(2) An intermediary bank, or a payor bank which is not the depositary bank, is neither given notice nor otherwise affected by a restrictive indorsement of any person except the bank's immediate transferor or the person presenting for payment.

"(3) Except for an intermediary bank, any transferee under an indorsement which is conditional or includes the words 'for collection', 'for deposit', 'pay any bank', or like terms (subparagraphs (a) and (c) of Section 3-205) must pay or apply any value given by him for or on the security of the instrument consistently with the indorsement and to the extent that he does so he becomes a holder for value."

The same theme was further carried out in section 3-419 of the Uniform Commercial Code concerned primarily with defining when an instrument is converted:

"(3) Subject to the provisions of this Act concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

"(4) An intermediary bank or payor bank which is not a depositary bank is not liable in conversion solely by reason of the fact that proceeds of an item indorsed restrictively (Sections 3-205 and 3-206) are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor."

The result of these sections has been to create a situation dramatically different from that which obtains with regard to forged instruments. It is, of course, well established that a payee bank which transfers funds on the strength of a forged instrument is liable in the first instance to its drawer. *(Shipman v Bank of State of N. Y.,* 126 NY 318; *Commercial Trading Co. v Trade Bank & Trust Co.,* 286 App Div 722, 726.) Under the sections quoted above no such remedy is available to the drawer against a payor bank (which is not also a depositary bank) which has paid out the drawer's money on

an instrument negotiated in violation of a restrictive indorsement.

It is not easy to believe that the drafters of the Uniform Commercial Code carefully defined restrictive indorsements (Uniform Commercial Code, § 3-205), meticulously exempted from liability for negotiation of such instruments intermediary banks and payor banks which are not depositary banks (Uniform Commercial Code, § 3-206, subds [1] and [2]), unmistakably pointed out the special liability for conversion of a depositary bank that does not pay or apply an instrument consistently with a restrictive indorsement (Uniform Commercial Code, § 3-419, subds [3] and [4]), if it were intended to deny any remedy to the drawer of a check who suffers a loss because a depositary bank failed to act consistently with a restrictive indorsement. To suggest, as is implicit in the dissenting opinion, that a payee who has suffered a loss because of a depositary bank's failure to comply with a restrictive indorsement might recover, but not a drawer who has sustained a similar loss, is to import a distinction that cannot here be reconciled with common sense or justice.

LUPIANO, J. (dissenting). The gravamen of plaintiff's claim against defendant-appellant the Bank of New York as contained in paragraphs 7, 28 and 29 of the complaint is as follows:

"7. John M. Walker (hereinafter 'Walker') is a former employee of plaintiff who was involved with checking bills and invoices received by plaintiff, preparing checks to pay such bills and invoices submitted to plaintiff by vendors, suppliers and others to whom plaintiff owed money, and submitting said checks for the required co-signatures to plaintiff's corporate officers authorized to sign on its behalf.

"28. During the period from February, 1976 to September, 1976, Walker, by employing a fraudulent and dishonest scheme, caused plaintiff to draw [ten] checks on its checking account in Citibank, each of which was payable to an actual and existent vendor or supplier from which plaintiff routinely purchased construction and other related materials and equipment.

"29. Walker deceived plaintiff's officers into signing each of said checks by falsifying records and fraudulently misrepresenting to such officers that said checks were to be remitted to

the designated payee vendors or suppliers in payment of valid, outstanding bills tendered by them to plaintiff."

Walker failed to remit these checks to the named payees. Instead, he "placed thereon the forged * * * endorsements of the named payees" and presented the checks to defendant Bank of New York for deposit in an account maintained by Walker or his confederates. Each of the checks contained a restrictive indorsement to credit the account of or deposit only to the account of the named payee.

Defendant Bank of New York's motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 7) for failure to state a cause of action predicated on the principle that no cause of action lies in favor of the drawer against a collecting bank which has collected on a check from the drawee bearing a forged indorsement, was denied by Special Term. "A bank to which paper is sent for collection ordinarily is not the agent of the maker or other obligor. There is no privity of contract between the drawer of a check and the collecting bank" (5A NY Jur, Banks and Trust Companies, § 511). In *Henderson v Lincoln Rochester Trust Co.* (303 NY 27, 31-33, 1951) the Court of Appeals pertinently observed: "No action * * * lies in contract by a payee against a drawee bank for paying out the proceeds of a check bearing his forged indorsement * * * (a) cause of action in contract lies in favor of the drawer of the check, but not in favor of the payee. The drawee in paying on a check bearing a forged indorsement of the payee breaches its contractual obligation to the drawer to pay only on the latter's written direction. *(Shipman v. Bank of State of New York,* 126 N.Y. 318.) The drawee becomes liable in contract to the drawer and the indorsers become liable to the drawee. The privity is apparent. As between the drawee and the payee, however, there is no contractual relation. *(First Nat. Bank v. Whitman,* 94 U.S. 343; *Aetna Nat. Bank v. Fourth Nat. Bank,* 46 N.Y. 82, 87, 90; *Stern v. President & Directors of Manhattan Co.,* 134 Misc. 351, affd. 228 App. Div. 616; 14 A.L.R. 764, 767; 38 Harv. L. Rev. 857, 884.) * * * 'Where, however, a collecting bank cashes a check on a forged endorsement a different principle applies. There the collecting bank on the forged endorsement acquires no title whatever to the paper because the endorsement, its only source of title, is a nullity. It therefore is wrongfully in possession of the check and in equity and good conscience holds it for the payee. If, while in possession of it, it by means of the forged endorsement collects

it, then it holds the proceeds of the collection in the same way for the payee, and that relationship creates a privity between it and the payee. And if the payee elects to ratify the collection of the check by the collecting bank he may recover from it the amount collected' * * * To put it in other words, a collecting bank is merely an agent for the purpose of collecting from the drawee bank the proceeds of the check delivered to it. When it takes the check for collection, it assents to the agency and becomes bound by the terms of the instrument received. Those terms include an obligation to pay the proceeds collected to the true payee owner *in the absence of a valid indorsement.* The moment the collecting bank receives the proceeds it holds money belonging to the owner of the check and becomes a debtor of such owner and of no one else in the absence of a valid indorsement."

In *Low v Merchants Nat. Bank* (24 AD2d 322) it was held that a drawer of checks has no cause of action against a collecting bank which credited the proceeds on restrictive indorsements "for deposit only," not to the account of the named payee, but to another account. It was noted that the drawer is not without a remedy in that in a proper case he can bring suit against the drawee bank with which there is privity. In turn, the drawee bank can proceed against the collecting bank. Indeed, this court on numerous occasions has held that a cause will not lie by the drawer against the collecting bank where the payee's name was forged by a dishonest employee of the drawer or such employee indorsed the name of a fictitious payee (see *Titan Air Conditioning Corp. v Chase Manhattan Bank,* 61 AD2d 764; *Brokerage Data Processing Corp. v Eastchester Sav. Bank,* 39 AD2d 895; *Chartered Bank v American Trust Co.,* 26 AD2d 623, affg 47 Misc 2d 694 and 48 Misc 2d 314; *Trojan Pub. Corp. v Manufacturers Trust Co.,* 273 App Div 843, affd 298 NY 771; *General Fire Assur. Co. v State Bank,* 177 App Div 745). Of course, there is the corollary principle that "[i]n a proper case * * * the wronged payee may go against the collecting bank which by reason of the wrongful payment to another stands in a debtor relationship to the payee (see *Henderson v. Lincoln Rochester Trust Co.,* 303 NY 27; *Soma v. Handrulis,* 277 N.Y. 223; *City of New York v. Bronx County Trust Co.,* 261 N.Y. 64)" *(Low v Merchants Nat. Bank, supra,* p 324).

Section 3-206 of the Uniform Commercial Code entitled "Effect of Restrictive Indorsement," overturns the rule deline-

ated in *Soma v Handrulis* (277 NY 223) to the effect that a payee has a cause of action against an intermediary bank liable where an instrument was collected through it inconsistently with a restrictive indorsement. Such intermediary bank "may ignore and is not affected by a restrictive indorsement made by any person except the bank's immediate transferor or the person presenting the instrument for payment" (Uniform Commercial Code, § 3-206, subds [2], [3]; Anderson, Uniform Commercial Code [2d ed], § 3-206:4). Defendant the Bank of New York while an intermediary bank in the collection process is also a depositary bank, that is, "the first bank to which an item is transferred for collection" (Uniform Commercial Code, § 4-105, subd [a]). As a depositary bank, said defendant "must apply the proceeds of a check in a manner which is consistent with a restrictive indorsement and is liable when it fails to do so to the person harmed by such failure * * * Insofar as a depositary bank is concerned, it would appear that the continuing negotiability of a restrictively-indorsed check, as one indorsed 'for deposit', does not give the bank any greater protection than if the law were that further negotiation was not possible" (Anderson, Uniform Commercial Code [2d ed], § 3-206:6; see *Salsman v National Community Bank,* 102 NJ Super 482, affd 105 NJ 164). Accordingly, insofar as the depositary bank is concerned, the rule set forth in *Soma v Handrulis* is viable.

The major change imposed by section 3-206 "from the N.I.L. is the reversal of the rule inferred from N.I.L. section 47, that an instrument once restrictively indorsed can no longer be negotiated. In the case of collection indorsements, the Code provision recognizes the unreasonableness of imposing restrictions upon banks in the chain of collection after the bank taker. Accordingly the present law is reversed as to intermediary banks in the collection process; such intermediary banks are neither given notice nor otherwise affected by the restrictive indorsement" (Penney, A Summary of Articles 3 and 4 And Their Impact in New York, 48 Cornell LQ 47, 57).

Patently, no section of the Uniform Commercial Code specifically sets forth the liability on the part of a bank for payment inconsistent with a restrictive indorsement (see *Matter of Quantum Dev. Corp.,* 397 F Supp 329, 336). The drafters of the code provided that as to matters not specifically covered by the code, "the principles of law and equity, including the law merchant * * * shall supplement its provisions" (Uniform

Commercial Code, § 1-103). Section 3-206 is silent with respect to the rights of a drawer, if any, against a collecting bank. Hence, resort must be had to the pre-Uniform Commercial Code cases and to the common law. "The common law rule in New York denies any right of 'action * * * by [a] drawer against [a] collecting bank for coversion of moneys or proceeds of checks bearing forged indorsements' * * *. Articles 3 and 4 of the U.C.C. apparently leave this rule undisturbed. See Stone & Webster Engineering Corporation v. First National Bank & Trust Company of Greenfield, 345 Mass. 1, 184 N.E. 2d 358, 362-363; cf. Low v. Merchants National Bank & Trust Company of Syracuse, 24 A.D. 2d 322, 266 N.Y.S. 2d 74, 76 (1966)" *(Central Cadillac v Stern Haskell, Inc.,* 356 F Supp 1280, 1283).

Section 3-419, entitled "Conversion of Instrument; Innocent Representative" and which specifically designates certain acts as constituting conversion of a negotiable instrument, does not provide the drawer with a remedy against the depositary collecting bank under the circumstances herein. Said section provides, in pertinent part: "(3) Subject to the provisions of this Act concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands. (4) An intermediary bank or payor bank which is not a depositary bank is not liable in conversion solely by reason of the fact that proceeds of an item indorsed restrictively * * * are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor." To reiterate: Citibank is the drawee bank and the basis of plaintiff's claim as drawer against the Bank of New York as first collecting bank (the depositary bank) is for alleged negligence in failing to abide by the restrictive indorsement of the named payee, albeit the restrictive indorsement was forged. This claim does not state a cause of action. In analyzing this statutory enactment, it has been observed that "(t)he drawer cannot sue the paying bank which makes payment on the forged indorsement of the payee for the reason that the negotiable instrument is property of the holder and not of the drawer. And, the drawer has no right in

the money or proceeds where payment is made to the holder of an instrument or to one purporting to be the holder under a forged indorsement, for a negotiable instrument is the property of the holder" (Anderson, Uniform Commercial Code [2d ed], § 3-419:10).[1]

In a closely analogous case involving a suit by a drawer against the collecting bank which "cashed" checks for an individual who had forged the payee's restrictive indorsement and in which the drawer relied upon section 3-419 of the Uniform Commercial Code, the Supreme Judicial Court of Massachusetts in an opinion by Chief Justice WILKINS, declared: "The plaintiff as a depositor in First National [Bank of Boston, the drawee] was merely in a contractual relationship of creditor and debtor * * * The amounts the defendant [the depositary collecting bank] received from First National to cover the checks 'cashed' were the bank's funds and not the plaintiff's. The Uniform Commercial Code does not purport to change the relationship * * * Whether the plaintiff was rightfully deprived of a credit is a matter between it and the drawee, First National. If we treat the first count as seeking to base a cause of action for money had and received upon a waiver of the tort of conversion—a matter which it is not clear is argued—the result will be the same. In this aspect the question presented is whether a drawer has a right of action for conversion against a collecting bank which handles its checks in the bank collection process. Unless there be such a right, there is no tort which can be waived. The plaintiff relies upon the Uniform Commercial Code * * * § 3-419, which provides, '(1) An instrument is converted when * * * (c) it is paid on a forged indorsement.' This, however, could not apply to the defendant, which is not a 'payor bank', as defined in the Code, § 4-105 (b) as 'a bank by which an item is payable as drawn or accepted' * * * A conversion provision of the Uniform Commercial Code which might have some bearing on this case is § 3-419(3). This section implicitly recognizes that, subject to defences, including the one stated in it, a collecting

1. "The Code makes no provision for action by a drawer against a collecting bank or person receiving payment on forged indorsements. The absence of Code provision on this point might be indicative of a view that such an action cannot be sustained, particularly since the Code confers a right of action on behalf of the drawer against the payor bank while the Code warranty of good title to the check is given by a person receiving payment to subsequent holders and to the payor, not to the drawer" (Bailey, Law of Bank Checks [3d ed], § 15.12, p 512; see, also, 29 Albany L Rev 15, 281; 30 Brooklyn L Rev 221-222, 256-257; 48 Cornell LQ 56-57).

bank, defined in the Code, § 4-105(d), may be liable in conversion. In the case at bar the forged indorsements were 'wholly inoperative' as the signatures of the payee, Code §§ 3-404(1), 1-201(43), and equally so both as to the restrictive indorsements for deposits, see § 3-205(c), and as to the indorsement in blank, see § 3-204(2). When the forger transferred the checks to the collecting bank, no negotiation under § 3-202(1) occurred, because there was lacking the necessary indorsement of the payee. For the same reason, the collecting bank could not become a 'holder' as defined in § 1-201(20), and so could not become a holder in due course under § 3-302(1). Accordingly, we assume that the collecting bank may be liable in conversion to a proper party, subject to defences, including that in § 3-419(3) * * * *But there is no explicit provision in the Code purporting to determine to whom the collecting bank may be liable, and consequently, the drawer's right to enforce such a liability must be found elsewhere. Therefore, we conclude that the case must be decided on our own law, which, on the issue we are discussing, has been left untouched by the Uniform Commercial Code in any specific section.* In this Commonwealth there are [no cases in which the question was discussed] * * * The authorities are hopelessly divided. We think that *the preferable view is that there is no right of action. Jurisdictions denying such right are* * * * *Trojan Pub. Corp. v. Manufacturers Trust Co., 298 N.Y. 771, affirming 273 App. Div. (N.Y.) 843* * * * We state what appears to us to be the proper analysis. Had the checks been delivered to the payee * * * the defendant might have been liable for conversion to the payee. The checks, if delivered, in the hands of the payee would have been valuable property which could have been transferred for value or presented for payment; and, had a check been dishonored, the payee would have had a right of recourse against the drawer on the instrument under § 3-413(2). Here the plaintiff drawer of the checks, which were never delivered to the payee [citation], had no valuable rights in them. Since, as we have seen, it did not have the right of a payee or subsequent holder to present them to the drawee for payment, the value of its rights was limited to the physical paper on which they were written, and was not measured by their payable amounts. *Trojan Pub. Corp. v. Manufacturers Trust Co.,* 298 N.Y. 771, 773 * * * An action by the drawer against the collecting bank might have some theoretical appeal as avoiding circuity of action * * * So one might ask: If the drawee is liable to the drawer and the collecting bank is

liable to the drawee, why not let the drawer sue the collecting bank direct? We believe that the answer lies in the applicable defences set up in the Code. The drawer can insist that the drawee recredit his account with the amount of any unauthorized payment. Such was our common law * * * This is, in effect, retained by the Code §§ 4-401(1), 4-406(4). But the drawee has defences based upon the drawer's substantial negligence, if 'contributing', or upon his duty to discover and report unauthorized signatures and alterations. §§ 3-406, 4-406. As to unauthorized indorsements, see § 4-406(4). Then, if the drawee has a valid defence which it waives or fails upon request to assert, the drawee may not assert against the collecting bank or other prior party presenting or transferring the check a claim which is based on the forged indorsement. § 4-406(5) * * * If the drawee recredits the drawer's account and is not precluded by § 4-406(5), it may claim against the presenting bank on the relevant warranties in §§ 3-417 and 4-207, and each transferee has rights against his transferor under those sections. If the drawer's rights are limited to requiring the drawee to recredit his account, the drawee will have the defences noted above and perhaps others; and the collecting bank or banks will have the defences in § 4-207(4) and § 4-406(5), and perhaps others. If the drawer is allowed in the present case to sue the collecting bank, the assertion of the defences, for all practical purposes, would be difficult. The possibilities of such a result would tend to compel resort to litigation in every case involving a forgery of commercial paper. It is a result to be avoided" (Stone & Webster Eng. Corp. v First Nat. Bank & Trust Co. of Greenfield, 345 Mass 1, 5-10; emphasis supplied).[2]

The mere fact that the forged indorsement here was a restrictive one as compared with a forged blank indorsement does not vitiate the rationale of Titan Air Conditioning Corp. v Chase Manhattan Bank, 61 AD2d 764, supra; Trojan Pub.

---

2. Britton, Bills And Notes [2d ed], § 144 states: "The drawer of a check, as such, has no right to recover from the party to whom the drawee paid under a forged indorsement. The cause of action to recover money paid out under a forged indorsement from the party to whom payment was made belongs to the drawee or other payor. The drawee has no right to debit the account of the drawer on such checks. This being so the drawer's rights are not affected by the act of the drawee in paying the wrong party. It follows, therefore, that the drawer may not recover money paid out under a forged indorsement from the party to whom the drawee erroneously paid" citing in the footnote General Fire Assur. Co. of Paris v State Bank (177 App Div 745).

*Corp. v Manufacturers Trust Co.,* 273 App Div 843, affd 298 NY 771, *supra; General Fire Assur. Co. v State Bank,* 177 App Div 745, *supra,* and numerous related cases. "The rule of stare decisis presupposes the existence of a well-defined precedent determinative of the point in question" (1 Carmody-Wait 2d, NY Prac, § 2:52). Beyond peradventure the decisions of the Court of Appeals must be followed by all lower appellate courts (1 Carmody-Wait 2d, NY Prac, § 2:58). The instant case does not warrant departure from the doctrine of *stare decisis* which makes for stability and certainty in the law. Adherence to the many precedents and authorities delineated above affords justice and certainty and accords with reason: There is no scintilla of changed conditions which would render adherence to such precedent harmful or detrimental to society.

To reiterate, the indorsements involved in this matter were not made by the named payees, but were placed thereon by Walker, an employee of the drawer. As the plaintiff drawer states in its verified complaint: "12 * * * Walker * * * placed thereon the forged and unauthorized endorsements of the named payees designated on such checks." As explicitly defined in subdivision (43) of section 1-201 of the Uniform Commercial Code " *'Unauthorized'* * * * indorsement means one made without actual, implied or apparent authority and *includes a forgery"* (emphasis supplied). The majority predicate possible liability on the part of the depositary bank to the drawer on the mere fact that the indorsement was restrictive and not nonrestrictive, albeit it was a forged indorsement. In this manner they seek to distinguish a most recent controlling pronouncement of this court in *Titan Air Conditioning Corp. v Chase Manhattan Bank. N.A. (supra).* As the indorsement herein was forged, it was unauthorized and such lack of validity extends to the restrictive aspect of the indorsement. The fact that the forger may forge an indorsement in one instance in a nonrestrictive manner and in another instance in a restrictive manner, does not afford the drawer an additional remedy to the well-recognized remedy of suit against the drawee. To hold otherwise is to depart from common sense by attributing to the wrongdoer (the forger) the power to add or detract from the available relief due the drawer by the simple expedient of forging the indorsement either restrictively or without restriction—an absurd result.

Allusion by the majority to code provisions relating to authorized restrictive indorsements in an effort to create a

totally new remedy for the drawer against the first collecting bank (the depository bank) is inapposite. Under the code definition of unauthorized indorsement, "it is immaterial what the signer's intent was in making the signature without authority" (Anderson, Uniform Commercial Code [2d ed], § 1-201:131). The forged indorsements in a claim brought by the drawer against the drawee may, under appropriate circumstances within the ambit of paragraph (c) of subdivision (1) of section 3-405, be deemed effective and thus, shield the drawee bank. This possibility, however, may not serve to create an additional remedy for the drawer against the depository bank. As noted in the Practice Commentary to section 3-405 in McKinney's Consolidated Laws of New York (Book 62½, Uniform Commercial Code): "Prior New York law has permitted the maker or drawer of an instrument to rely on the fact that a later holder or payor would have to make sure for his own protection that the payee's endorsement was proper. See Gallo v. Brooklyn Savings Bank Co., 1910, 199 N.Y. 222 * * * This section changes this to place the burden on the maker or drawer and to penalize him rather than the first solvent and identifiable endorsee, for his lack of due care or gullability." Patently, section 3-405 was not intended to affect existing civil liability for forgery to the drawer or any other person (Official Comment—Purposes of Changes and New Matter-5). Accordingly, the fact that the drawee may have a complete defense under section 3-405 to the remedy of the drawer in seeking to recover from the drawee, may not serve as a basis under this section for the imposition of a new remedy, to wit, suit by the drawer against the depository bank.[3]

The verified complaint sets forth circumstances embraced within section 3-405 in that the employee of the drawer intended that the named payee should not have an interest in or receive the benefit of the interest—that is, that he should be merely a nominal payee. Under the code, therefore, in the situation delineated in the complaint herein, any person could effectively indorse the name of the nominal payee and effectively negotiate the instrument (Anderson, Uniform Commercial Code [2d ed], § 3-405:5).

---

3. The verified complaint specifically states that the Bank of New York was a collecting bank to which Walker or his confederates presented the plaintiff's checks bearing the forged indorsements for deposit to an account maintained at the bank by Walker, or his confederates. Thus, this is not a situation where the Bank of New York purchased the checks and sought to collect on them for its own account.

"The nominal payee rule applies where the maker or the drawer executes the instrument naming the nominal payee in reliance on his agent's or employee's having furnished him with the name of the payee, and the intention of the agent or employee was that the payee shall not have any interest in the instrument. Here the agent or employee furnishing such information or anyone else may effectively indorse the payer's name and negotiate the instrument" *(ibid)*. "The effect of Code § 3-405 is to put the loss on the customer and not on the drawee bank. When the drawee bank pays and the imposter rule applies, the bank properly charges its customers account with the amount of the check involved" (Anderson, *supra,* § 3-405:6). "The operation of the imposter rule may have the effect in a given case of negating liability which would otherwise arise but for the imposter rule. Thus, a transferor cannot be held liable for breach of his warranty of the genuineness of signatures even though the signature of the payee is a forgery if the signature in fact is operative by virtue of the imposter rule. Thus, it has been held that a payor-drawee bank cannot recover from the collecting bank for the breach of a warranty that the signature of the payee on the indorsement was genuine where the signature, otherwise a forgery, comes within the imposter provision of Code § 3-405 * * * by which an indorsement forged * * * is effective as negotiation, because the payor-drawee bank can show no loss as caused by the forgery" (Anderson, *supra,* § 3-405:8). Of course, the civil or criminal liability of the person making the forged indorsement is not affected by the code (Uniform Commercial Code, § 3-405, subd [2]; § 3-404, subd [1]).

The imposter rule which shifted the burden where the indorsement was improper on the drawer was first embraced in New York by amendment in 1960 to subdivision 3 of section 28 of the Negotiable Instruments Law. The only change between the code (Uniform Commercial Code, § 3-405) and the Negotiable Instruments Law is the code's requirement of *indorsement.* Under the Negotiable Instruments Law, indorsement was not necessary because the paper was regarded as "bearer paper." Now the instrument, rather than treated as bearer in form, is regarded *as payable to the imposter* (see McKinney's Cons Laws of N. Y., Book 62½, Uniform Commercial Code, § 3-405, NY Ann.[1] [a].) With this explication, the *revolutionary* tenor of the majority position can be clearly perceived. Without precedent or foundation in reason or com-

mon sense, the mere fact that the forged indorsement herein contains a forged restriction is utilized to obviate the thrust of the imposter rule (§ 3-405), to create a new remedy in favor of a drawer against the first collecting bank (the depositary bank) and to place in the control of the wrongdoer (the forger) the power to give to or deprive the drawer of the new remedy by the expedient of forging the indorsement either in blank or with restriction.

Finally, the observation by SANDLER, J., that "[t]o suggest, as is implicit in the dissenting opinion, that a payee who has suffered a loss because of a depositary bank's failure to comply with a restrictive indorsement might recover, but not a drawer who has sustained a similar loss, is to import a distinction that cannot here be reconciled with common sense or justice," misreads the sense of this dissent and the legal authority upon which it is based. Of course, a drawer as well as a payee may recover for a loss sustained because of a depositary bank's failure to comply with a restrictive indorsement. However, the remedy of the drawer to recover for such loss as set forth by the legal precedents and authorities enumerated herein *is against the drawee.* This is not a situation where a drawer is denied *any* remedy and the concurring opinion of SANDLER, J., insofar as it implies the absence of any remedy to the drawer is without foundation and is not cognizant of the real problem involved. Again, the fact that the drawer's remedy by way of suit against the drawee may prove unfruitful by virtue of the imposter rule (§ 3-405) does not afford a basis for giving to the drawer a new additional remedy by way of suit against a collecting bank. It is the drawer's *own conduct* under the imposter rule which causes the burden of loss to shift to him.

Accordingly, the order of the Supreme Court, New York County (HELMAN, J.), entered July 13, 1977, denying defendant the Bank of New York's motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 7) should be reversed, on the law, and the motion granted.

BIRNS, J., concurs with YESAWICH, J.; SANDLER, J., concurs in an opinion; MURPHY, P. J., and LUPIANO, J., dissent in an opinion by LUPIANO, J.

Order, Supreme Court, New York County, entered on July 13, 1977, affirmed. Respondent shall recover of appellant $60 costs and disbursements of this appeal.