OPINION OF THE COURT
Marvin E. Segal, J.
Motion by the defendant Citibank, N.A. (hereafter Citibank) for an order pursuant to CPLR 3212 granting summary judgment dismissing the amended verified complaint as against said defendant on the ground that there is no material issue of fact.
In September 1989, Daniel and Ruth Shube entered into a contract for the purchase of the premises located at 28 Harold Road, Plainview, from Philip Yen-Po Cheng and Tami Tsa Chen-I Cheng, for $195,000. On February 16, 1990, the Shubes attended the closing. Their attorney, Robert Wirth; the attorney for Apple Bank, the mortgagee; the brokers; Tami Cheng; an individual introduced as Philip Cheng; the sellers’ attorney, Howard Epstein; and Robert Finn, the title closer employed by M.K.M. Abstract Services representing Security Title and Guaranty Company, were also present at the closing. The Shubes allege that Mr. Finn demanded that Mr. Cheng produce identification at the closing, whereupon he produced only a Blue Cross card and a Mastercard. Tami Cheng stated that her husband did not drive an automobile and could not produce a driver’s license. The Shubes further contend that Mr. Epstein vouched for the identity of Mr. Cheng. Mr. Finn proceeded to acknowledge Mr. Cheng’s signature and a deed purportedly conveying the subject premises was executed and delivered to the Shubes.
At closing, Apple Bank issued a check in the sum of $97,810.63, payable to the Chengs, from a portion of the proceeds of a mortgage loan totalling $156,000 made by Apple Bank to the Shubes.
In or about April 1990, the Shubes were contacted by a Mr. Cheng. He notified them that he had not appeared at the closing on February 16, 1990, had never executed any contract of sale or deed, and had never authorized anyone to do so on his behalf.
In December 1990 the law firm of Cruser, Hills, Hills and Besunder, hired by Security Title, commenced an action, on behalf of the Shubes, against Philip Cheng and Tami Cheng *257 seeking actual and punitive damages and a declaration regarding title of the premises (index No. 23223/90). In or about May 1992, the firm of Becker Ross Stone DeStefano and Klein, substituted counsel, amended the complaint to add Apple Bank as a plaintiff and Citibank, as a defendant, and asserting a fourth cause of action by Apple Bank against Citibank claiming breach of warranty, pursuant to UCC 4-207, by Citibank, for endorsing and transferring a forged check to Apple Bank. The amended complaint also contains equitable subrogation claims on behalf of Apple Bank.
In or about March 1992, the Shubes commenced an action seeking damages for fraudulent and negligent misrepresentations against Epstein and seeking damages for negligence in the performance of notarial duties against Finn (index No. 10899/92).
In or about June 1992, Apple Bank commenced an action against the Shubes to foreclose on the mortgage on the premises (index No. 13917/92). The Shubes are defending the foreclosure action, in part, on the grounds that they lack title and the mortgage secures an unenforceable obligation. They further have asserted that the defect in title precludes a commercially reasonable sale of the premises impacting on the Shubes’ liability for any deficiency.
Citibank now moves for an order granting summary judgment dismissing the amended verified complaint as against Citibank on the ground that there are no material issues of fact. Citibank contends that if the endorsement by Philip Cheng on the subject check for $97,810.63 is not a forgery, then Citibank has no liability to Apple Bank. If, however, said endorsement is a forgery, Citibank asserts it has no liability to Apple Bank because the forged endorsement is "effective”, pursuant to UCC 3-405 in that the drawer of the check, Apple Bank, was induced to draw the check by an imposter.
Apple Bank responds that it was not induced to draw the subject check by an imposter. Rather, Apple Bank contends that, at the closing, it issued four checks which were "cut and made payable pursuant to the direction of the Shubes, representing the total mortgage proceeds of $156,000.00”. Apple Bank asserts that its only participation at the closing was the transaction between Apple Bank, as mortgagee, and the Shubes, as mortgagors; that there were no direct dealings between Apple Bank and any alleged imposter; and therefore no imposter induced Apple Bank to draw the subject check.
*258 Citibank replies that Apple Bank’s defense to this summary judgment motion is disingenuous; that Apple Bank, as mortgagee and drawer, issued the subject check and delivered it to the Chengs, to protect its own interests, based upon information obtained from its title search.
Neither moving party has presented any dispositive authority on the issue before the court and the questions of law herein appear to be of first impression. The analysis of the relevant issues must focus on the status of Apple Bank in the context of this action. The transaction herein is not only a transaction between a collecting bank (Citibank) and a drawee bank (Apple Bank) governed by UCC 4-207. In addition to being the drawee bank in the subject transaction, Apple Bank is also the drawer of the check in issue, and is the mortgagee, who was present at the closing at which the subject check was issued and delivered.
The common-law rule in this State, unchanged by the enactment of the Uniform Commercial Code, except under certain specific limited circumstances (see, Underpinning & Found. Constructors v Chase Manhattan Bank, 61 AD2d 628, affd 46 NY2d 459), sets forth that a drawer (Apple Bank) does not have a cause of action against a collecting bank (Citibank) for collecting an improperly endorsed check. (Horovitz v Roadworks, 76 NY2d 975, 976; Prudential-Bache Sec. v Citibank, 73 NY2d 263, 272; Spielman v Manufacturers Hanover Trust Co., 60 NY2d 221, 224; Trojan Pub. Corp. v Manufacturers Trust Co., 298 NY 771; Low v Merchants Natl. Bank & Trust Co., 24 AD2d 322; Central Cadillac v Stein Haskell, 356 F Supp 1280, 1282.) A drawer has no cause of action against a collecting bank which wrongfully collected an instrument bearing a forged endorsement because the collecting bank is not deemed to have "dealt with any valuable property of the drawer”. (Underpinning & Found. Constructors v Chase Manhattan Bank, supra, 46 NY2d, at 464.) When a drawer issues a check in the name of a particular payee, the drawee bank, pursuant to its contractual relationship with the drawer (see, Brigham v McCabe, 20 NY2d 525), may apply funds from the drawer’s account to its payment only upon receiving the payee’s authorized endorsement. Payment by the drawee bank of a check bearing a forged endorsement is deemed therefore to have been made solely from the funds of the drawee bank rather than from the funds of the drawer. (Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank, 57 NY2d 439, 444.) As the collecting bank has received funds of the drawee bank and has *259 not received funds belonging to the drawer, the drawer has no cause of action against the collecting bank. Accordingly, in its capacity as drawer of the check in issue, Apple Bank is precluded from asserting any claim, relating to the check for $97,810.36, against Citibank.
Apple Bank is, however, also the drawee bank. Apple Bank contends that its status as such entitles it to seek damages for breach of warranty against Citibank pursuant to UCC 4-207.
This section of the Uniform Commercial Code places a duty on a collecting bank to insure that a check’s endorsements are not forgeries, and a collecting bank is held to warrant the genuineness of its endorsements. If a collecting bank breaches this warranty it is liable to the drawee bank for damages, the rationale being that the first bank in the collection chain is in the best position to detect forgeries. (UCC 4-207; Leonard Smith, Inc. v Merrill Lynch, Pierce, Fenner & Smith, 129 AD2d 397; White and Summers, Uniform Commercial Code § 15-1, at 581 [2d ed].)
Citibank contends, however, that as Apple Bank was induced by an imposter to draw the subject check, the endorsement of Philip Cheng is effective, and Citibank is relieved of liability under UCC 4-207, entitling it to summary judgment as a matter of law.
UCC 3-405 creates an exception to the general rule set forth hereinabove that a drawer is not liable on an unauthorized endorsement. The statute provides at UCC 3-405 (1) (a) that:
"(1) [a]n indorsement by any person in the name of a named payee is effective if
"(a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee”.
This statute, in part, codified case law which held that "[t]he attempt at all times is to effectuate the intent of the drawer, and where the imposter * * * is clearly shown to be the person to whom payment was intended his indorsement on the check is not invalid as a forgery” (Halsey v Bank of N. Y. & Trust Co., 270 NY 134, 139). "Where a person has been induced by fraud to draw a check to the order of an existing person, whose name and identity has been fraudulently assumed by another, and to deliver the check to the impostor, it has been held by most courts that an indorsement by the impostor is not a forgery and the bank upon which it is drawn may pay it upon such indorsement.” (Cohen v Lincoln Sav. *260 Bank, 275 NY 399, 404.) The intent of both this case law and UCC 3-405 is to " 'shift the balance in favor of the bank’ ” (Prudential-Bache Sec. v Citibank, supra, at 270) and to " 'narrow the liability of the banks and broaden the responsibility of their customers’ ” (Prudential-Bache Sec. v Citibank, supra, at 270, quoting 1 White and Summers, Uniform Commercial Code § 16-5, at 804 [Practitioner’s 3d ed]). "The reason for this rule is that it is believed that as a practical matter the drawer is in a better position to prevent the fraud by utilizing proper accounting methods, than is even the first party to take from the forger * * * [T]he prime function of all these rules and distinctions * * * [is] to impose liability on the party which could most readily have prevented the fraud. Where the only defect is the forgery itself and the forgery could and should have been prevented by the drawer, liability is imposed on the drawer”. (Underpinnings & Found. Constructors v Chase Manhattan Bank, supra, at 468-469.)
The effect of UCC 3-405 is to put the loss on the drawer, who was induced by an imposter to draw a check, and not on the drawee bank. When the imposter rule applies, the drawee bank may properly charge the drawer’s account with the amount of the check involved (Underpinnings & Found. Constructors v Chase Manhattan Bank, 61 AD2d 628, 643, supra, quoting Anderson, Uniform Commercial Code § 3-405:6 [2d ed]). Thus, the drawee bank cannot recover from the collecting bank for breach of warranty of the genuineness of the endorsement on the check pursuant to UCC 4-207, because the payee bank cannot establish that it suffered any loss incident to the forgery. (Underpinnings & Found. Constructors v Chase Manhattan Bank, 61 AD2d 628, 643, supra, quoting Anderson, Uniform Commercial Code § 3-405:8 [2d ed].)
In the instant action, Apple Bank is both the drawer and the drawee bank. As set forth hereinabove, as drawer, it has no viable claim against Citibank. As the drawee bank, it has a viable claim against Citibank under UCC 4-207 unless the imposter rule of UCC 3-405 (1) (a) is applicable. If in fact Apple Bank, as drawer of the subject check, was induced to draw the check by an imposter, Apple Bank as the drawee bank properly charged the account of Apple Bank, drawer, and Apple Bank as drawee has no actionable claim of breach of the warranties of UCC 4-207 against Citibank.
While Apple Bank asserts that it cut and drew the subject check upon the instructions of the Shubes and not upon the inducement of an imposter, under the facts and circumstances *261 of this case, the court finds that Apple Bank did in fact draw the subject check upon the inducement of an imposter. Apple Bank appeared at the closing, by counsel, who was present at the time the identity of Philip Cheng was addressed by the title closer. Apple Bank drew and delivered the subject check to the Chengs, not upon the direction of the Shubes, but to protect its own interests and secure its mortgage by making certain that the mortgage proceeds were paid out in a manner which would give the Shubes good and valid title. Apple Bank, as drawer, present at the closing, was in a better position to detect the fraud herein than the collecting bank. It is the clear policy of the Uniform Commercial Code to impose liability for fraud upon the party which could have most readily prevented it. Further, Apple Bank’s contention that the mortgage proceeds were payable to the Shubes and that it would have paid all said proceeds to the Shubes, except for their instructions to draw a check to the Chengs, is unavailing. Even if Apple Bank had paid the entire $156,000 mortgage proceeds to the Shubes and the Shubes had then drawn a check payable to the Chengs in the sum of $97,810.36, said check would still be governed by the imposter rule. The endorsement would have been effective and Apple Bank as the drawee bank would have had no recourse against Citibank.
Accordingly, the motion by Citibank for an order granting summary judgment dismissing the amended verified complaint as against Citibank is granted.